*This opinion is subject to revision before final publication in the Pacific Reporter.*

**2013 UT 50**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Plaintiff and Appellee,*

*v.*

CAMERON HEATH RICHARDSON,
*Defendant and Appellant.*

No. 20110168
Filed August 9, 2013

Third District, Salt Lake
The Honorable Vernice Trease
No. 101901649

Attorneys:

John E. Swallow, Att'y Gen., Karen A. Klucznik, Asst. Att'y Gen.,
Bradford D. Cooley, Salt Lake City, for appellee

E. Rich Hawkes, Michael D. Misner, Salt Lake City, for appellant

JUSTICE LEE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE PARRISH joined.

JUSTICE LEE, opinion of the Court:

¶1   Cameron Richardson appeals from convictions for rape and forcible anal sodomy. He claims error in his trial in the exclusion of evidence of the specific nature of his prior sexual relationship with the victim—evidence he claims was properly admissible under Utah Rule of Evidence 412(b)(2)(A). We agree. We hold that the trial court misconstrued this rule to incorporate a heightened standard of relevance, and we reverse and remand for a new trial.

I

¶2   In February 2010, Richardson lived with the victim and her two young children from a previous relationship. The couple

went to bed one night after spending the evening watching movies while the victim's children slept in a separate room nearby. Once in the bedroom, the couple argued about the victim's recent trip to California and her relationship with a man there.

¶3　Though Richardson and the victim agree on this sequence of events, their versions of what transpired after this point diverge. Richardson maintains that after the argument, he and the victim engaged in consensual oral and anal "make-up sex." The victim alleges that the verbal argument turned physical and ended with Richardson assaulting her and forcing her to have oral, vaginal, and anal sex.

¶4　According to the victim, Richardson became angry during the argument and issued two ultimatums: He stated that if the victim did not willingly engage in anal sex with him, he would call Child Protective Services and have her children taken away, presumably for some unspecific infraction. And he warned that he would force her to have anal sex if she refused to do so willingly. The victim testified that she repeatedly refused to comply, and when she tried to leave the bedroom, Richardson blocked her path, grabbed her arms, and pushed her toward the bed. A struggle then ensued, during which the victim admits to hitting Richardson on his side, which prompted him to hit her three times in her rib area.

¶5　The struggle ended with the victim lying on her back on the bed with her head "hanging off the bed." She alleged that, while she was in this position, Richardson bent over her and forced her briefly to "give him oral [sex]." When it ended, she rolled onto her side, and Richardson put his hand on the side of her neck and squeezed her neck "off and on" so hard that she could not breathe and felt like her "eyes were going to pop out." She testified that she "scream[ed] for help throughout the strangulation" but that Richardson told her he would kill her if she didn't "muffle her screams." Though the victim testified that she screamed "[a]t the top of [her] lungs," apparently none of her neighbors called the police to report screaming. After the alleged choking, according to the victim, the couple struggled again, with Richardson eventually subduing the victim. He then bent her over the bed (the top half of her body lying on the bed and her knees on the floor), ripped off her pants, and took off her underwear. Though the victim reportedly told Richardson no and tried to get

away, he restrained and warned her that "the more you fight and struggle, the worse it's going to be on you."

¶6    According to the victim, Richardson next applied lubricant to his penis and penetrated her vaginally for about twenty seconds. He then penetrated her anally, stating, "[i]f you pretend like you like this it'll be over soon. If you start acting like you like it[,] I might not be so rough." In response, the victim continued to say no, to scream, and to ask for help, but was told again to be quiet. After several minutes, Richardson ejaculated in the victim's anus.

¶7    The victim testified that after the physical and sexual assaults ended, Richardson forced her to call the man she had a relationship with in California and ask him to come get her. So, with Richardson listening by speakerphone, she called the man's number and spoke first to his mother. Though the victim testified that she did not tell the mother about the assaults because Richardson was listening, the mother reported to police that the victim told her on the phone about the assaults and rape. She eventually spoke with her friend, who stated that he would try to get there as soon as possible.

¶8    After that call, Richardson eventually fell asleep. Though she testified that she was experiencing pain and other physical discomfort as a result of the assaults, the victim did not call the police. Instead, she texted her mother (around 4:00 a.m.), saying that she had a "dire emergency," that she was "no longer safe around [Richardson]," and that she "need[ed] a safe place to go [ASAP]." She asked her mother to come get her and her children, but her mother had taken painkillers and did not feel comfortable driving, and told the victim to lock herself in her children's bedroom and wait. The victim testified that she did so until her children woke up around 8:00 a.m., after which she got them dressed and left the apartment on foot with as many belongings as she could carry.

¶9    According to the victim, as she was walking down the street with her children, a woman in a silver Mercedes or BMW stopped her and gave her $100 to feed her children. And though the victim testified that the woman eventually gave her a ride to her mother's house, her mother testified that the victim arrived at

her house in a cream-colored Jeep—the same type of vehicle that the victim and Richardson shared at the time.

¶10 The victim's mother testified that upon arriving, the victim was weak, tired, scared, and in so much pain that she couldn't walk normally or sit without assistance. Over the next several hours, Richardson called and texted the victim multiple times and eventually arrived at her mother's house. After initially refusing to leave, Richardson left when the victim's mother threatened to call the police, but only went as far as the street opposite the house. Eventually, the victim's mother did call the police, who took the victim to the hospital.

¶11 There she was examined by a nurse, who observed petechia, bruises, scratches, and redness on the victim's body that were consistent with attempted strangulation and forced vaginal and anal sex. At trial, however, Richardson countered this conclusion with testimony from an expert who opined that at least some of the victim's physical injuries were inconsistent with her version of events.

¶12 A police officer later spoke with Richardson, who claimed that the couple had engaged in consensual oral and anal "makeup sex." And though he denied punching the victim in her ribs, he admitted "that he had put a hand on her neck" but that he did not know if he put any pressure on her neck to prevent her from breathing.

¶13 Richardson was charged with aggravated kidnapping (a charge that was later dropped), two counts of forcible sodomy (one count for forced oral sex, one count for forced anal sex), rape, aggravated assault, and two counts of domestic violence in the presence of a child.

¶14 Before trial, Richardson filed a motion to introduce evidence of the victim's prior conviction for lying to police officers about a sexual assault (which was granted and not appealed), and evidence of prior instances of sexual conduct between him and the victim under Utah Rule of Evidence 412. Specifically, Richardson wanted to offer evidence that he and the victim had engaged previously in "consensual instances of oral sex, sex while the alleged victim was having her period and anal sex between the two parties." He informed the court that he wanted to bring the evidence in through his own testimony or through the testimony of

other witnesses—particularly the victim—and that the evidence "would be offered to prove consent as allowed under Rule 412(b)(2)(A)(a)" and as "impeachment evidence as the alleged victim has testified to the contrary at preliminary hearing."

¶15 At a hearing on the motion, defense counsel argued that the sexual history evidence was necessary to show that the anal sex in question was consensual because some jurors might presume that this type of intercourse is nonconsensual. He also argued that the evidence was proper under rule 412 because it helped prove consent by contextualizing the couple's sexual relationship and establishing a pattern of consensual anal sex between the parties. Though defense counsel stated that how and when the evidence came in would be a strategic trial decision, he argued that Richardson "[a]t least" should be allowed to testify to it.

¶16 Though the State conceded and the trial court agreed that Richardson should be allowed to present general evidence that he and the victim had a sexual relationship, the court considered the more detailed evidence about previous anal intercourse during menstruation to be inadmissible, reasoning that "[i]f there is no evidence or argument . . . that the anal intercourse was non-consensual because they hadn't engaged in it previously or it was unusual or something of that nature . . . , then I don't know[,] whether or not they'd had it before, that [the] particular type of intercourse is relevant to the case here." He likewise stated that "[i]f there is no evidence or argument that she doesn't engage in intercourse when she's menstruating or something of that nature, then I'm not sure what the relevance is as to [consent]." Further, the court opined that it wouldn't "assume that jurors are going to think any kind of anal intercourse is presumptively non-consensual, especially in this day and age."

¶17 The trial court thereafter issued the following ruling:

> Absent evidence or argument from the State that the parties had never engaged in consensual anal intercourse, or that the charged sexual misconduct should be considered particularly humiliating or embarrassing value because it involved anal sex, the proffered testimony regarding prior consensual anal sex is not sufficiently relevant to be admissible under Utah R. Evid. 412(b)(2)(A).

It also ordered that

> Defendant may not present evidence of prior in-
> stances of sexual behavior between himself and the
> alleged victim unless and until the State opens the
> door, either by presenting testimony that the parties
> had never engaged in consensual anal intercourse,
> or by arguing that anal intercourse was forced by
> the Defendant as a means of humiliating or degrad-
> ing the alleged victim.

¶18 At trial, the State did not argue that the couple never en-
gaged in consensual anal sex or that anal sex was aimed at de-
grading the victim, and Richardson did not testify. Though Rich-
ardson was ultimately acquitted of aggravated assault, forcible
oral sodomy, and commission of domestic violence in the pres-
ence of a minor, he was convicted of vaginal rape and forcible
anal sodomy. On appeal, Richardson claims that the trial court's
exclusion of the sexual history evidence under rule 412(b)(2)(A)
was error and that the exclusion violated his constitutional rights.
We agree with the former point and do not reach the latter.

## II

¶19 Utah Rule of Evidence 412 broadly prohibits admission of
"evidence offered to prove that a victim engaged in other sexual
behavior" or "evidence offered to prove a victim's sexual predis-
position." UTAH R. EVID. 412(a) (2010).[1] Even if this kind of evi-
dence is relevant in some way to an element of the crime at issue,
we have determined that its "unusual propensity to unfairly prej-
udice, inflame, or mislead the jury" or "to distort the jury's delib-

---

[1] Updates to the Utah Rules of Evidence became effective De-
cember 1, 2011. Those changes were stylistic in nature. UTAH R.
EVID. 412, 401, 402 advisory committee's note (2011) ("The lan-
guage of this rule has been amended as part of the restyling of the
Evidence Rules to make them more easily understood and to
make style and terminology consistent throughout the rules. The-
se changes are intended to be stylistic only. There is no intent to
change any result in any ruling on evidence admissibility."). So,
while we cite the rules in effect at the time of Richardson's trial,
our discussion is equally applicable to the rules as they now
stand.

erative process" requires its exclusion. *See* UTAH R. EVID. 412 advisory committee's note (internal quotation marks omitted).[2]

¶20 This general prohibition is subject to several exceptions, however, which allow "specific instances of the accuser's past sexual behavior to be admitted." *State v. Tarrats*, 2005 UT 50, ¶ 20 n.1, 122 P.3d 581; UTAH R. EVID. 412(b) (2010). The exception at issue in this case, rule 412(b), states that "evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered . . . by the accused to prove consent" is admissible if it "is otherwise admissible" under our evidentiary rules.

¶21 The sexual history evidence proffered by Richardson falls squarely within this exception. He proposed to present "specific instances of sexual behavior" with the victim—that the two had engaged in consensual anal sex while the victim was menstruating. And with that evidence he sought to "prove consent," by suggesting that the precise behavior he was charged with (anal sex while the victim was menstruating) was the kind of behavior he and the victim had engaged in consensually in the past. Under rule 412(b), the only remaining question is whether this evidence was "otherwise admissible" under the rules of evidence.

¶22 The trial court relied on this caveat to exclude the evidence after the pretrial hearing, concluding that the evidence is "not sufficiently relevant to be admissible under" rule 412(b)(2)(A). Richardson contends that this was error. He insists that there is no "heightened relevancy test for evidence of specific instances of sexual activity between an alleged victim and the accused," and asserts that the evidence should have been admitted because it was relevant under the lenient standards of rules 401 and 402.

¶23 We agree. The trial court's exclusionary ruling was based on a misunderstanding of rules 401 and 402. We reverse in light of that threshold legal error, which of course is not a matter on

---

[2] *See also State v. Boyd*, 2001 UT 30, ¶ 46, 25 P.3d 985 ("Rule 412 safeguards the alleged victim from the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the fact finding process." (internal quotation marks omitted)).

which any deference is owing to the trial court. *See Barrientos ex rel. Nelson v. Jones*, 2012 UT 33, ¶ 8, 282 P.3d 50 (review of trial court's interpretation of the rules of evidence is for correctness). We further conclude that Richardson did not waive or lose his ability to challenge this error on appeal and that the error prejudiced his defense. And we accordingly reverse Richardson's convictions and remand for a new trial.

## A

¶24 By rule, "relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." UTAH R. EVID. 401 (2010). Relevant evidence is presumptively admissible; irrelevant evidence is not. UTAH R. EVID. 402. Together these rules establish a "very low" bar that deems "even evidence with the slightest probative value" relevant and presumptively admissible. *State v. Martin*, 2002 UT 34, ¶ 34, 44 P.3d 805 (internal quotation marks omitted).[3]

¶25 Richardson's proffered evidence easily clears this low bar. Here, "the fact . . . of consequence" is consent or, specifically, whether the victim consented to anal sex with Richardson on the night of the incident. Thus, any evidence that tends to make consent "more or less probable" is relevant.[4] The excluded evidence makes consent more probable here because it contextualizes the victim's sexual relationship with Richardson. Through evidence that *was* admitted, the jury knew that Richardson and the victim were in a relationship and lived together at the time of the incident. Indeed, the State conceded at the hearing on the 412 motion that the defense could properly present evidence that the two had

---

[3] *See State v. Jaeger*, 1999 UT 1, ¶ 13, 973 P.2d 404 ("[B]ecause the standard for determining whether evidence is relevant is so low, the issue of whether evidence is relevant is rarely an issue.").

[4] *Cf. People v. Adair*, 550 N.W.2d 505, 512–13 (Mich. 1996) (holding that evidence of past atypical sexual activity between the accused and the alleged victim was not admissible under Michigan's rule 412 given the defense's stance that the allegedly wrongful sexual conduct never occurred rather than that it was consensual).

a sexual relationship. The excluded evidence merely added detail to that knowledge. If the general evidence of a sexual relationship was relevant, the more detailed evidence was as well.

¶26 That detail was relevant to consent. Rule 412(b)(2)(A) rests on the notion that a person is more likely to consent to sex with a past sexual partner. *See Wood v. Alaska*, 957 F.2d 1544, 1551 (9th Cir. 1992) ("[T]he victim's prior acts *with the defendant* can shed considerable light on her attitude toward having sex with him [at the time of the incident].").[5] That premise is in no way under-

---

[5] *Cf. Michigan v. Lucas*, 500 U.S. 145, 148–52 (1991) (indicating that prior sexual conduct with the accused is relevant to the issue of consent); *United States v. Ramone*, 218 F.3d 1229, 1235 (10th Cir. 2000) (stating that "proffered evidence of [the accused] sexual relationship with the victim . . . which included evidence of specific sexual acts with inanimate objects squarely fits within Rule 412['s exception]"); *Wood v. Alaska*, 957 F.2d 1544, 1551 (9th Cir. 1992) ("[T]he Supreme Court has also indicated that prior sexual conduct with the defendant is relevant to the issue of consent."); *George v. Commonwealth*, No. 2001-SC-1067-MR, 2003 WL 22227195, at *2 (Ky. Sept. 18, 2003) ("[P]ast sexual behavior between the alleged victim and the defendant is relevant and is generally admissible on the issue of consent."); *State v. Ginyard*, 468 S.E.2d 525, 530 (N.C. Ct. App. 1996) ("[P]rior consent from a complainant to the defendant on trial is relevant to the complainant's subsequent consent to that defendant . . . ."); *State v. Johnson*, No. M2001-01973-CCA-R9-CD, 2002 WL 992402, at *3 (Tenn. Crim. App. May 15, 2002) ("[A]s indicated by the exception set forth in [Tennessee's rule 412(b)(2)(A)], evidence that the defendant's accuser has previously engaged in consensual sexual behavior with the defendant is relevant to the issue of consent."); *State v. Gonyaw*, 507 A.2d 944, 946–47 (Vt. 1985) (disagreeing with the trial court's statement that evidence of a past sexual relationship between the victim and accused "could never have probative value," and stating that "consensual sexual activity over a period of years [between the accused and the victim], coupled with a claimed consensual act reasonably contemporaneous with the act complained of, is clearly material on the issue of consent" and that the trial court could only exclude the evidence "if its probative value outweighed its private character").

mined by contextualizing detail about the nature of the sexual relationship. If a person is more likely to consent to sex with a past sexual partner, she is also more likely to consent to the kind of sexual relations she has had with a partner in the past. Additional, contextualizing detail can hardly undermine the relevance of such evidence.

¶27  The trial court's contrary ruling was premised on a misunderstanding of rule 401 or rule 402 or both. In excluding Richardson's evidence, the trial court seemed to labor under the impression that the evidence had to be not only minimally relevant but significantly so. But our relevance rules are binary. They provide only that relevant evidence is presumptively admissible and irrelevant evidence is not. And they define relevance in binary terms: Either evidence is relevant because it makes a fact of consequence more or less probable, or it is not because it does not.

¶28  Rule 412(b)(2)(A) does nothing to alter the standard. It reaffirms it by incorporating by reference the admissibility principles elsewhere in our rules—by establishing that evidence of specific instances of the victim's past sexual conduct with the accused may be admitted to prove consent if it is "otherwise admissible" under the rules.

¶29 The binary standard of relevance in our rules leaves no room for an evaluation of whether evidence of Richardson's past anal intercourse with the victim was "sufficiently relevant." Either it was relevant or it wasn't; and in this case it was for reasons noted above. Perhaps it could be said, as the trial court did, that Richardson's proffered evidence was not necessary "in this day and age" to counter the notion that anal intercourse is always nonconsensual. But that was not the only purpose of the evidence. And in any event, relevance turns on tendencies (to make a matter of consequence more or less probable) not necessities. The proffered evidence was clearly relevant in providing contextualizing detail regarding Richardson's past sexual relationship with the victim,[6] and on that basis it was admissible under our rules.

---

[6] *State v. Yenser*, 889 N.E.2d 581, 584 (Ohio Ct. App. 2008) (holding that evidence that the victim had previously engaged in consensual anal sex with the accused was relevant to whether the victim had consented to the anal sex at issue).

¶30 In the abstract, perhaps the notion that Richardson's proffered evidence was "not sufficiently relevant" could be construed as a determination that the evidence was inadmissible under rule 403—on the ground that its probative value was substantially outweighed by a danger of unfair prejudice or confusion of the issues. But in the context of this trial record, it is quite apparent that the trial court's decision was premised on our rules of relevance (as incorporated in the "otherwise admissible" clause of rule 412(b)(2)(A)).

¶31 At the hearing on the rule 412 motion, the trial court expressed its concerns about the proffered evidence in terms of its relevance to consent rather than the dangers it presented. The written order is along the same lines. It sets up the issue to be decided as one of relevance, and nowhere mentions any of the problems that can keep evidence out under 403. And although defense counsel briefly mentioned rule 403 at the hearing on the rule 412 motion, neither the State nor the trial court intimated that the evidence failed the rule 403 balance. In fact, the trial court seemed to consider and reject the most obvious 403 argument—that the unconventional nature of the sexual conduct involved would lead to unfair prejudice. *Cf. Mayo v. Commonwealth*, 322 S.W.3d 41, 49–50 (Ky. 2010) (outlining the social stigma associated with anal sex as being one possible reason a trial judge could exclude evidence of anal sex under 403).

¶32 Thus, because the court gave no indication that its exclusionary ruling was based on rule 403, we read its ruling as excluding the evidence based on its misunderstanding of our relevance rules. This was a legal error warranting no deference. Because the excluded evidence consisted of "specific instances of sexual behavior by the alleged victim" with "the accused to prove consent" that was not shown to be otherwise inadmissible under any other rule of evidence, it should have been admitted under rule 412(b)(2)(A).[7]

---

[7] Because the State has not argued on appeal that the offered sexual history evidence was rightly excluded under rule 403, we decline to comment on whether rule 403 could serve as a basis for exclusion on remand.

B

¶33 The State suggests that Richardson has lost the right to challenge the exclusion of that evidence on appeal even if it was properly admissible under rule 412(b)(2)(A). First, the State argues that Richardson "waived any rule 412 claim related to his own testimony when he affirmatively waived his right to testify." It cites as support for this argument our caselaw stating that "[t]o preserve for appellate review a claim of improper impeachment with a prior conviction, a defendant must testify." *State v. Gentry*, 747 P.2d 1032, 1036 (Utah 1987).

¶34 We have never adopted this rule in the 412 context, and we decline to do so now. Requiring a defendant to testify before bringing an appeal makes sense when the defendant seeks to challenge evidentiary rulings that admit impeachment evidence. After all, impeachment evidence is only usable against a witness who actually testifies. And if the defendant does not testify, a reviewing court "has no way of knowing whether the [State] would have sought to impeach" that testimony with the evidence that is the subject of the contested evidentiary ruling. *Luce v. United States*, 469 U.S. 38, 42 (1984). Further, without knowing how the witness's testimony helped or hindered the defense, a reviewing court cannot assess the harm impeachment of that testimony might have caused. *Id.* at 41–42. A defendant's failure to testify causes no such difficulties in the rule 412 context—as 412 evidence, unlike impeachment evidence, is not usable only against a witness who actually testifies.

¶35 Second, the State argues that Richardson's 412 claim fails because he invited the error that he identifies on appeal. Specifically, the State suggests that Richardson "never sought a ruling allowing him to present this evidence on cross-examination of the State's witnesses regardless of the witnesses' prior testimony." Instead, he sought only "a ruling that would allow him to present the evidence on cross-examination if prior testimony had rendered it relevant, i.e. if prior testimony had opened the door to it." And since the trial court gave him exactly what he asked for, he cannot now complain. We disagree.

¶36 The State's characterization of Richardson's 412 request is inaccurate; he never requested the limited use ruling the State attributes to him. In his 412 motion, Richardson informed the court

that "[t]he defense may choose to call [Richardson] to the [stand] and through [him] and/or the alleged victim present evidence of prior specific instances of sexual conduct between [him] and the alleged victim." It also states that the evidence "would be offered to prove consent" and/or used as "impeachment evidence as the alleged victim has testified to the contrary at preliminary hearing." This language indicates that Richardson sought broad and comprehensive use of the evidence in question, not the conditional one he received.

¶37 The State's argument to the contrary seeks to penalize Richardson for defense counsel's lack of clairvoyance about how trial would proceed. For example, the State supports its invited error argument with defense counsel's statement at the 412 motion hearing that "[i]f we were not going to put [Richardson] on the stand I don't think we would raise those issues . . .[, but] it's hard to say. . . ." Admittedly, defense counsel equivocated somewhat on exactly how or when it would use the sexual history evidence. But those equivocations are understandable given the preliminary nature of the hearing. They in no way suggest that Richardson sought a ruling that would allow him to introduce the evidence only if the State opened the door.

¶38 The State also seeks to use other statements from the 412 motion hearing to support its "invited error" argument, but it takes these statements out of context and ignores the substance of the hearing as a whole. For example, the State points us to defense counsel's statement that he might introduce the evidence "on cross examination if anything had come up that required me to ask that" and that his decision "would be based on the testimony of the other witnesses and what they said." But both of those statements were made after defense counsel clarified the scope of Richardson's 412 request. At one point, the court asked defense counsel to verify that Richardson was requesting "that [he] be permitted to testify about [the evidence] if he decides to take the witness stand," to which defense counsel responded, "*[a]t least that*, Judge, and *others* would be based on the testimony of the other witnesses and what they said." Thus, Richardson clearly and unequivocally asked that he be allowed to testify to the sexual history evidence. And when the court asked, "So your request would be if the door were opened?," defense counsel responded, "No, no, Judge."

¶39 Richardson did not paint himself into his current corner. The trial court did that by its interpretation of our rules of relevance. That interpretation was error, and the error was not invited by Richardson.

C

¶40 That error, however, "will require reversal only if [our] confidence in the jury's verdict is undermined." *State v. Billingsley*, 2013 UT 17, ¶ 21, __ P.3d __ (alteration in original) (internal quotation marks omitted).[8] Our confidence in a verdict wanes when "there is a 'reasonable likelihood' that the verdict would have been different" but for an erroneous ruling. *State v. Clopten*, 2009 UT 84, ¶ 39, 223 P.3d 1103. "If there is no reasonable doubt about guilt whether or not [erroneously excluded] evidence is considered, there is no justification for a new trial." *State v. Schreuder*, 712 P.2d 264, 275 (Utah 1985). If, on the other hand, "the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *Id.*

¶41 In this case, our confidence in the verdict against Richardson is sufficiently undermined to warrant a new trial. The case against Richardson turned on whether the jury believed his version of events or the victim's.[9] Thus, evidence "that could reason-

---

[8] *Cal Wadsworth Constr. v. City of St. George*, 898 P.2d 1372, 1378–79 (Utah 1995) ("An error is harmful if it is reasonably likely that the error affected the outcome of the proceedings. In other words, [f]or an error to require reversal, the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict." (alteration in original) (internal quotation marks omitted)); *see also* UTAH R. EVID. 103(a) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and . . . if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.").

[9] While both parties presented medical experts, those experts' testimony related to the sexual assaults largely canceled each other out, with each admitting that at least some of the victim's injuries could have been attributed to either consensual or forced sex. The experts also disagreed about significance and/or presence of

ably impact a jury's assessment on this issue—by either discrediting [the victim] or by making [the defendant's] story more credible—is sufficient to make likely an outcome more favorable to [the defendant]." *Martin*, 2002 UT 34, ¶ 48 (internal quotation marks omitted). Here, the excluded sexual history evidence does both.

¶42 Knowing that the victim had previously engaged in consensual anal sex with Richardson when she was menstruating makes it easier to accept his version of what transpired on the night in question—that she was menstruating and engaged in consensual anal sex with him. This increase in the believability of Richardson's story naturally and likely would have resulted in a corresponding increase in skepticism of the victim's story. This is significant given that Richardson had already put the victim's credibility into play by successfully admitting evidence of her prior conviction for lying to police officers about a sexual assault. And increased doubt about the victim's credibility would have amplified apparent inconsistencies in her story—such as the fact that no neighbor reported the victim's alleged screaming; the fact that the victim's mother said she arrived at her home in a cream-colored Jeep and not in a silver BMW or Mercedes, as the victim had testified; and the fact that, though the victim testified that she did not mention the rape or assault when she talked to her friends in California by phone that night because Richardson was monitoring the conversation, her friend's mother told police just the opposite.

¶43 The jury obviously did not accept the victim's story hook, line, and sinker. It convicted Richardson of only two of the six counts with which he was charged. And, importantly, the jury acquitted Richardson on the forcible oral sodomy charge even though he admitted that he engaged in oral sex with the victim on the night in question. It likewise acquitted Richardson of aggravated assault, even though he admitted to placing his hand on the victim's neck and the State presented physical evidence arguably corroborating the victim's story about the physical assault.

¶44 Perhaps these acquittals could be explained away as "mercy" acquittals, as the State suggests. But they are also consistent with the notion that the jury was conflicted about the evidence

---

the injuries allegedly caused by the punching and attempted strangulation.

and the competing versions of events offered by the victim and Richardson. Under the circumstances, we cannot reject the idea that the excluded sexual history evidence could have tipped the scales wholly in Richardson's favor. On the contrary, we conclude that, had the evidence been admitted, there is "a reasonable likelihood that the verdict" would have been different. *See Clopten*, 2009 UT 84, ¶ 39 (internal quotation marks omitted).

¶45 Thus, we hold that the trial court's exclusion of Richardson's proffered sexual history evidence under rule 412(b)(2)(A) was error that undermined the jury's verdict. We accordingly reverse Richardson's convictions and remand for a new trial.

——————