# 2022 UT 12

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH, in the Interest of J.A.L. and J.O.L.,
Persons Under Eighteen Years of Age

J.L. and J.A.,
*Appellants,*

*v.*

STATE OF UTAH,
*Appellee.*

No. 20200271
Heard September 16, 2021
Filed February 24, 2022

On Certification from the Court of Appeals

Fifth District Juvenile, Iron County
The Honorable Troy A. Little
No. 1161641, 1161642

Attorneys:[1]

Alexandra Mareschal, J. Frederic Voros, Jr., Julie J. Nelson, Salt Lake
City, Christa G. Nelson, Cedar City, for appellant J.L.

Colleen K. Coebergh, Salt Lake City, Candice N. Reid, Cedar City,
for appellant J.A.

Sean D. Reyes, Att'y Gen., Carol L. C. Verdoia, John M. Peterson,
Asst. Att'ys Gen., Salt Lake City, for appellee

Martha Pierce, Salt Lake City, Guardian ad Litem
for J.A.L. and J.O.L.

---

[1] Attorneys for amici curiae: William A. Thorne, Jr., Midvale,
Movant Pro Se; Kirstin Norman, American Fork, for Parental
Defense Alliance of Utah.

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court in which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE, and JUSTICE PETERSEN joined.

———————

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 This is an appeal from a juvenile court order terminating the parental rights of the mother and father of two children. The Division of Child and Family Services has been engaged with this family since at least July 2018. A range of support services has been provided over time. The children were removed from the mother's custody in December 2018 and placed in foster care. And at various times both the father and mother have been subject to a court order prohibiting contact between them and to orders requiring treatment for domestic violence, substance abuse, and mental health issues.

¶2 The Division initially pursued a permanency goal of reunification with the parents. When reunification failed, the Division petitioned to change the goal to adoption. After a hearing and an order granting the new permanency goal, the children were moved to a kinship placement with the father's brother in Arkansas. The uncle had agreed to adopt the children. And after a subsequent hearing on the termination of parental rights, the juvenile court entered an order terminating the parental rights of both the mother and father.

¶3 In the termination proceeding, the juvenile court found that both parents were "unfit" and had "neglected" the children. The court based its determination on factors listed in Utah Code section 78A-6-508(2)—concluding that the children were "abused and neglected" by "[t]he domestic violence perpetrated by the Father and the Mother's failure to protect the children," and that the parents' substance abuse "render[ed] [them] unable to care for the children."

¶4 After finding statutory grounds to terminate, the court determined that termination was "strictly necessary" in the "best interest" of the children. It concluded that the children could not be returned home "today"—or "at this point"—because the mother and father had failed to sufficiently rehabilitate themselves. And it held that the children's "tremendous need for permanency and stability" could not be met while preserving the parents' rights within a permanent custody and guardianship arrangement.

¶5 Six weeks after the termination order was entered, the adoptive placement with the uncle failed. The children returned to state custody in Utah.

¶6 After the kinship placement failed, the father and mother filed motions for post-judgment relief. The mother sought 60(b)(6) relief in light of the "extraordinary circumstances" of the failure of the kinship placement. The father filed a 60(b)(6) motion on the same grounds. He also sought relief under 60(b)(5), asserting that the failed kinship placement meant that the judgment was "no longer equitable." The juvenile court denied the motions.

¶7 The mother and father appealed. The court of appeals certified the matter to this court based on a perceived need for our review of "a challenge to the current appellate standard of review in child welfare proceedings" and to consider "an issue regarding the effect of statutory changes on supreme court case law."

¶8 The mother and father raise different claims of error on appeal. The mother challenges only the juvenile court's findings, made at an evidentiary permanency hearing and allegedly at a subsequent review hearing, that she appeared "under the influence" at various hearings. She asserts that a judge is not qualified to make such findings without expert testimony. And she contends that the court denied her due process of law by making the findings without giving her notice and an opportunity to be heard.

¶9 The father challenges the juvenile court's best interest determination[2] and the court's denial of his motions for post-judgment relief. As an initial matter, the father asks us to conduct *de novo* review of termination proceedings—and overturn the deferential standard of review established in *State ex rel. B.R.*, 2007 UT 82, 171 P.3d 435. He also asks us to require specific factual findings and legal conclusions in parental rights termination orders. Regardless of our decision on the appropriate standard of review, the father contends that the juvenile court erred in concluding that termination of the father's rights was "strictly necessary" to promote the "best interest" of the children.

---

[2] The father does not challenge the juvenile court's determination that he is "unfit." *See In re B.T.B.*, 2020 UT 60, ¶¶ 19–20, 46, 76, 472 P.3d 827, *reh'g granted* (Aug. 13, 2020), *as amended* (Aug. 14, 2020) (clarifying that termination of parental rights under Utah law demands a "two-step inquiry" in which the juvenile court must first determine that the parent is "unfit" on statutory grounds and then "must find that termination of the parent's rights is in the best interests of the child" (citations and internal quotation marks omitted)).

¶10 We affirm in part and reverse and vacate in part. First, we note that the mother's claims are unpreserved and hold that she has failed to carry the burden of establishing plain error. Second, we reject the father's request that we abandon a deferential standard of review of a best interest determination but find threshold legal errors in the juvenile court's best interest analysis—in the assessment of whether the father had made sufficient progress in his rehabilitation under Utah Code section 78A-6-509(1)(b), and in the assessment of whether termination of parental rights is "strictly necessary" under Utah Code section 78A-6-507. Third, we vacate and remand for a new best interest determination under the law as clarified in this opinion. In so doing, we note that the mother failed to highlight the legal errors identified by the father in her briefs on appeal but conclude that the mother's rights should be on the table on remand in the unique circumstances of this case.

I

¶11 The mother challenges the juvenile court's findings that she appeared "under the influence" at court hearings. She asserts that the judge is not qualified to make such findings without expert testimony. And she claims that the court infringed her right to due process by making these findings without notice that the observations were being made and without affording her an opportunity to respond.

¶12 None of these points was preserved in the juvenile court, however. To succeed on appeal, the mother would therefore need to make a showing of plain error—that "(1) an error exists; (2) the error should have been obvious to the trial court; and (3) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome." *State v. Low*, 2008 UT 58, ¶ 20, 192 P.3d 867 (citations and internal quotation marks omitted).[3] And the mother has failed to carry that burden.

---

[3] Our court of appeals has recently observed that this court has not decided whether plain error applies in civil cases. *Miner v. Miner*, 2021 UT App 77, ¶ 11 n.3, 496 P.3d 242 (citing *Utah Stream Access Coal. v. Orange St. Dev.*, 2017 UT 82, ¶ 14 n.2, 416 P.3d 553 (noting that the court has "not . . . endorse[d] the ongoing viability of plain error review in civil cases"; "[n]or do we repudiate it")). We have "not had an opportunity to enter this debate, and would be open to doing so in a case in which the matter is presented for our decision."

(continued . . .)

¶13 We have previously upheld a juvenile court's legal conclusions based on observations of "outbursts" made in open court. *In re T.E.*, 2011 UT 51, ¶¶ 44–45, 266 P.3d 739. And the juvenile court in this case did not even go so far as to make a legal conclusion. It relied on its observation of the mother in court to require her to be subjected to testing for substance use—a follow-up under a standing order requiring ongoing substance abuse testing.[4] So we do not see how it could have been error—and certainly not an obvious error—for the court to use its observations as a basis for such testing where the mother's sobriety was already at issue.

¶14 Nor do we see a basis for concluding that any alleged error was prejudicial. In the termination order, the court refers to its "personal observations" of the mother only once—as a single consideration in a set of reasons supporting one of the five grounds for termination found by the court. And earlier in the proceedings, the court continued reunification services for the mother despite making a concurrent finding that "[t]hree quarters of the times the Mother is in court it appears she [is] under the influence of drugs"— and despite terminating reunification services as to the father in the same evidentiary permanency hearing. The mother has not established that there is any likelihood that her parental rights would not have been terminated if the juvenile court had not ordered testing on the basis of its observations, or if it had afforded the mother the right to respond that she asserts as a matter of due process.

---

*Utah Stream Access Coal.*, 2017 UT 82, ¶ 14 n.2. This is not such a case. Although the mother raises a claim of plain error, none of the parties ask us to rule on the propriety of plain error review in parental rights termination proceedings or in civil cases generally. And even if the doctrine of plain error does apply, the mother has failed to establish plain error. *Infra* ¶¶ 12–14. So we simply hold that the mother has not carried her burden of showing plain error.

[4] The termination order states that "[t]he [c]ourt asked for an updated substance abuse evaluation in July of 2019 because the [c]ourt has been concerned about the Mother coming to hearings when she was under the influence. It appeared to the [c]ourt that at some hearings the Mother would be clear and present, but on other occasions the Mother appeared to not be clear or present."

II

¶15 The father challenges the termination of his parental rights on two grounds. He contends that the juvenile court erred in (a) concluding that termination of his rights was "strictly necessary" in the "best interest" of the children; and (b) denying his motions for post-judgment relief. We reverse on the first ground and decline to reach the second because it is mooted by our threshold decision.

A

¶16 The father prefaces his challenge to the juvenile court's best interest analysis with a request that we overrule our longstanding case law on the standard of review of parental rights termination orders—requesting that we replace the established deferential standard of review with a *de novo* review for correctness. But we rejected parallel requests in two recent decisions. *See In re G.D.*, 2021 UT 19, ¶¶ 1, 3, 491 P.3d 867; *State ex rel. E.R.*, 2021 UT 36, ¶ 13, 496 P.3d 58. And the father has not identified a persuasive ground for reconsidering these decisions.

¶17 In *E.R.* we clarified that the best interest inquiry is a fact-like "mixed determination of law and fact" that is subject to deferential review. 2021 UT 36, ¶¶ 17, 22. Appellate deference, of course, is not absolute. The juvenile court's best interest analysis may be set aside if it is "against the 'clear weight of the evidence.'" *Id*. ¶ 6. It is also subject to reversal where it is premised on a threshold legal error. *See id*. ¶ 16 (noting that we "afford [n]o deference" to the juvenile court's "analysis of abstract legal questions" (alteration in original) (citation and internal quotation marks omitted)).

¶18 We reverse the juvenile court's termination of the father's parental rights on this basis. The juvenile court's order was infected by two legal errors. And those errors foreclose the usual basis for deference to the conclusion that termination of the father's rights was "strictly necessary" in the "best interest" of the children under Utah Code section 78A-6-507(1) (2020).[5] *See Rocky Ford Irrigation Co. v. Kents Lake Reservoir Co.,* 2020 UT 47, ¶ 78, 469 P.3d 1003 (citation

---

[5] The legislature amended the Termination of Parental Rights Act after the termination hearings in question. We cite and apply the version of the statute in effect at the time of the hearings. *See State v. Clark*, 2011 UT 23, ¶ 13, 251 P.3d 829 ("[W]e apply the law as it exists at the time of the event regulated by the law in question.").

omitted) (holding that a district court's findings were not owed deference where they were "infected by legal error").

1

¶19 In terminating the father's parental rights, the juvenile court concluded that it would be "neglectful" to "[r]eturn[] the children to the Father *today*." (Emphasis added.) It also found that a reunification of the children with the father would introduce a significant "safety risk" "*at this time*." (Emphasis added.) And it raised the concern that the father might not "be successful outside of treatment" given the lack of "any indication of future success" based on "the Father's past."

¶20 These statements are premised on legal error. In a case where the child is not in the parent's physical custody, the court must consider a set of "specific considerations" in assessing whether termination is strictly necessary in the best interest of children. UTAH CODE § 78A-6-509. And the listed considerations include "the effort the parent or parents have made to adjust their circumstances, conduct, or conditions to make it in the child's best interest to return [the child to the] home *after a reasonable length of time*." *Id.* § 78A-6-509(1)(b) (emphasis added).

¶21 The statute does not establish a specific timeframe for parents to "adjust their circumstances, conduct, or conditions." But it does afford a parent a "reasonable length of time" to make any necessary adjustments. And that requires the court to consider whether any needed adjustments were made within a reasonable time.

¶22 The court retains a measure of discretion in deciding on the length of the "reasonable" time.[6] But by statute it must exercise that discretion. And the juvenile court failed to do so here. It held that the father "ha[d] failed to appropriately adjust" his "circumstances, conduct, or conditions to make return in the children's best interest." In so doing, it failed to consider whether he had had a "reasonable

---

[6] In so holding, we reject the father's request that we establish a requirement that in order to terminate parental rights the court must find that it is "impossible" for a child to return to a parent over any period of time. The statute does not speak in terms of impossibility. It speaks in terms of reasonableness.

length of time" to do so.[7] And it exacerbated the problem by focusing on static assessments that it would be "neglectful" to "[r]eturn[] the children to the Father today" and would introduce a significant "safety risk" if they returned to him "at this time."

2

¶23 The juvenile court also premised its termination decision on concerns about the "tremendous need for permanency and stability" of the children. It considered the possibility of preserving the father's legal rights while awarding permanent custody to a guardian. But it rejected that move on the ground that it "would not . . . offer the same degree of permanency as an adoption," given that a permanent guardianship could be terminated at the request of the guardian or at least subject to visitation by the father. And it held that this "lack of stability would be harmful for the children."

¶24 This too was error. The court was right to consider the feasibility of a permanent guardianship. *See In re B.T.B.*, 2020 UT 60, ¶¶ 66–67, 472 P.3d 827 (explaining that the "strictly necessary" analysis requires consideration of the possibility of "feasible options" like awarding custody to a permanent guardian (citation and internal quotation marks omitted)). But it fell into legal error in concluding that this option would not provide the "same degree of permanency as an adoption." That is not the question under our law. A permanent guardianship by definition does not offer the same degree of permanency as an adoption. And there is always some risk that the permanent guardianship could come to an end, or be affected by visitation by the parent. If these categorical concerns were enough, termination and adoption would be strictly necessary across the board. But such categorical analysis is not in line with the statutory standard.

---

[7] Utah Code section 78A-6-508(6) states that "fail[ure] to comply substantially with the terms and conditions of a plan within six months after the date on which the child was placed or the plan was commenced, whichever occurs later" is "evidence of failure of parental adjustment." Earlier in the termination order, the juvenile court found that the parents were not in substantial compliance with the plan within six months. Despite this finding, the juvenile court must still engage with the section 509 timeframe. Failure of substantial compliance within six months is only "evidence" of failure to adjust.

¶25 By statute, the juvenile court must assess whether a permanent guardianship can "equally protect[] and benefit[]" the children in the case before it. *G.D.*, 2021 UT 19, ¶ 75 (citation omitted). That standard is not met by the categorical concern that a permanent guardianship is not as stable or permanent as an adoption. It requires analysis of the particularized circumstances of the case before the court. No such analysis is presented here. And the court's categorical dismissal of the possibility of a permanent guardianship is a further ground for reversal of the juvenile court's decision.

B

¶26 The above legal errors undermine our confidence in the juvenile court's basis for terminating the father's parental rights. They also foreclose the need for us to consider the father's challenge to the denial of his motions for post-judgment relief. The correctness of the denial of those motions is mooted by our decision to reverse in light of the legal errors in the parental termination order.

III

¶27 The father has established that the juvenile court's termination order was infected by the above-noted legal errors. That leaves the question of the effect of those errors on our disposition on appeal. We conclude that a remand to the juvenile court is appropriate. And we hold that both parents' legal rights should be on the table on remand.

A

¶28 The juvenile court's threshold legal errors foreclose the usual basis for deference to its factual findings and mixed determinations. In the face of such errors, an appellate court has at least two options. It may reverse and remand to the lower court for rehearing under a correct legal standard.[8] Or it may review the lower court's findings

---

[8] *See SIRQ, Inc. v. The Layton Cos., Inc.*, 2016 UT 30, ¶¶ 40–43, 56, 379 P.3d 1237 (remanding for a new trial on a false light verdict on the ground that "the trial court failed to exercise its gatekeeping function" to assure that the jury considered "only statements capable of defamatory meaning"); *State v. Richardson*, 2013 UT 50, ¶¶ 32, 45, 308 P.3d 526 (finding that the lower court had improperly excluded evidence and ordering a new trial).

under a non-deferential standard of review.[9] We take the former course of action here in light of the important role that our juvenile courts play in applying a complex body of law to a matter encompassing an extensive factual and procedural record.

B

¶29 In the parties' briefing on appeal, only the father identified the above-noted legal errors as a basis for reversal. The mother's appeal was limited to her challenge to the juvenile court's findings that she appeared "under the influence" in court.

¶30 The father urges this as a basis for concluding that the mother is foreclosed from participating in the proceedings on remand, or from having her rights on the table in a new "best interest" analysis in line with the refinements in our law set forth above. *See supra* ¶¶ 21–22, 24–25. He notes that a claim is generally waived if not raised on appeal. *See State v. Johnson*, 2017 UT 76, ¶¶ 15–16, 416 P.3d 443. And he asks us to hold that the mother forfeited her stake in a remand under claims of legal error that she failed to advance on appeal.

¶31 The father's position finds some threshold footing in our law. As a general rule, our courts respect the prerogatives of the parties in deciding which claims to pursue (or forgo) in litigation. *See Utah Stream Access Coalition v. VR Acquisitions, LLC*, 2019 UT 7, ¶¶ 36–37, 439 P.3d 593. In deference to those prerogatives, and in the interest of judicial economy and repose, the parties are generally stuck with the moves they make in litigation. *Patterson v. Patterson*, 2011 UT 68, ¶¶ 15–17, 266 P.3d 828. Our courts do not lightly second-guess the parties by reviving a claim they have forfeited by their pleading or briefing decisions.[10]

---

[9] *See Rocky Ford Irrigation Co. v. Kents Lake Reservoir Co.*, 2020 UT 47, ¶¶ 80–81, 469 P.3d 1003 (concluding that the lower court applied the incorrect legal standard for judging when a plaintiff brings an action in "bad faith" and reviewing the lower court's findings *de novo*).

[10] *See Utah Stream Access Coalition*, 2019 UT 7, ¶¶ 36–37, 439 P.3d 593 (applying this principle to claims before the district court); *State v. Johnson*, 2017 UT 76, ¶ 15–16, 416 P.3d 443 (extending this principle to claims of error on appeal).

¶32 The mother presumably would be foreclosed from participating in the proceedings on remand if she had failed to file an appeal.[11] But the mother did file an appeal. And the father has cited no case law that controls in the unusual circumstances presented here—where two appellants filed briefs on appeal and one of them has identified a legal error that affected not just both of the appellants but also the interests of other parties to this proceeding (the children).

¶33 In these circumstances, we are reluctant to give conclusive, controlling effect to the briefing decisions of the parties. The juvenile court's legal missteps infected its decision to terminate both the father's and the mother's legal rights.[12] And those missteps may bear significant consequences not just for the parents but for their children. The rights and interests of the parents and the children are not only substantial but intertwined. On remand, the decision whether to terminate one parent's rights could be affected by the decision whether to terminate the other's rights. And the decision whether one or both parents should retain their rights may have

_____

[11] *See* 20 MOORE'S FED. PRAC. CIV. § 304.11(3)(c) (stating that a party that "desires to challenge an order or judgment" must file an appeal rather than "arguing that it should benefit from the result in another party's appeal"); *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 400–01 (1981) (applying this rule and noting that the non-appealing party made a "calculated choice" and is stuck with the result of its choice); *Collins v. Sandy City Bd. of Adjustment*, 2002 UT 77, ¶¶ 16–19, 52 P.3d 1267 (endorsing and applying the rule in *Moitie* and concluding that a party that declined to file an appeal finds itself in a "predicament" "of [its] own making").

[12] Overall, the court stated that its "analysis" was "very similar" as to both parents. And it extended both of the above-noted legal errors to its analysis of the mother's legal rights: (1) considering the mother's "current ability" as a parent in light of her "past conduct," asserting that she had not "done enough" as of the date of the court's hearing, and concluding that it would be "neglectful" if "the children were returned" to her on that date; and (2) holding that the children "need permanency without the concern that *the parents* may continue to enter and exit their lives" and warning that "*[t]he parents* may petition for visitation" or the guardians "could seek to terminate the guardianship." (Emphasis added.)

substantial bearing on the analysis of the best interest of the children.[13]

¶34 With these concerns in mind, we conclude that the mother's briefing decisions should not foreclose her from participating in the case on remand. Both parents' legal rights should be on the table.

¶35 In remanding, we are not foreclosing the possibility that concerns expressed in the juvenile court's order—such as the risk and effects of domestic violence—may be a sufficient basis for termination of the parents' legal rights. Nor are we suggesting that the parents have not yet had a "reasonable length of time" to adjust their "circumstances, conduct, or conditions." On these and other points, we are simply holding that the juvenile court's opinion is too affected by legal error to merit deference on appeal. And we are sending the matter back to the juvenile court to exercise its discretion under a correct formulation of the law.

IV

¶36 We vacate the juvenile court's order terminating the parental rights of the parents. In so doing, we leave in place any threshold orders not challenged on appeal—such as the court's order establishing the parents' unfitness. But we remand the case for rehearing on the question whether termination of their parental rights is strictly necessary in the best interest of the children, under the governing legal standard as clarified in this opinion.

———————

[13] As the State and the father noted in their supplemental briefs, the determination as to one parent may bear on whether it is "strictly necessary" to terminate the rights of the other parent. If one parent retains his (or her) parental rights, adoption would no longer be an option, and it may no longer be "strictly necessary" to terminate the other parent's rights for the best interest of the children.