2014 UT App 212

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
MARICELA AGUIRRE-JUAREZ,
Defendant and Appellant.

Amended Memorandum Decision[1]
No. 20111059-CA
Filed September 11, 2014

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 111905996

Nathalie S. Skibine, Attorney for Appellant

Sean D. Reyes, Andrew F. Peterson, and Jacob S.
Taylor, Attorneys for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Amended
Memorandum Decision, in which JUDGES JAMES Z. DAVIS and
JOHN A. PEARCE concurred.

VOROS, Judge:

¶1     Maricela Aguirre-Juarez, who is not a U.S. citizen, was
prosecuted for identity fraud in Utah. The State alleged that she
used fraudulent papers to obtain employment. On advice of
counsel, she pled guilty to one count of class A attempted identity

---

1. This Amended Memorandum Decision replaces the
Memorandum Decision issued July 17, 2014, *State v. Aguirre-Juarez*,
2014 UT App 167. We have revised Paragraph 16 to eliminate any
possible unintended implication.

fraud. On appeal, Aguirre-Juarez contends that her counsel performed deficiently because the 364-day sentence he bargained for renders her permanently inadmissible to the United States under a federal statute. The State responds that her counsel's performance was not deficient, but that even if it was, she suffered no prejudice, because a different federal statute renders her permanently inadmissible to the United States in any event. We agree and affirm on that basis.[2]

¶2 Aguirre-Juarez used a "fake green card," another person's Alien Registration Number, and another person's social security number to obtain a job in Utah. The State charged Aguirre-Juarez with two third-degree-felony counts of identity fraud. As part of a plea bargain, the State dismissed one count and reduced Aguirre-Juarez's other count to attempted identity fraud, a class A misdemeanor.[3]

¶3 At Aguirre-Juarez's plea hearing, both counsel noted that her plea could have immigration consequences. The prosecutor stated, "I do wish to put on the record that the defendant is not a United States citizen, and I do want to make sure she is aware that this plea could have immigration consequences . . . ." Aguirre-Juarez's counsel responded, "Certainly. We have discussed that very carefully, and . . . she understands the consequences [of signing the plea deal]." Once she pled guilty, Aguirre-Juarez could have been deported regardless of her sentence, because the Immigration and Nationality Act (INA) classifies as deportable any alien convicted of a crime of moral turpitude "for which a sentence of one year or longer *may* be imposed." 8 U.S.C. § 1227 (a)(2)(A)(i) (2006) (emphasis added). In

---

2. The court commends counsel for both Aguirre-Juarez and the State on their concise and well-reasoned briefing of this appeal.

3. In Utah, class A misdemeanors carry a maximum penalty of one year imprisonment. Utah Code Ann. § 76-3-204 (LexisNexis 2012).

fact, at the time of the plea hearing, immigration authorities had already initiated deportation proceedings against Aguirre-Juarez.

¶4     But Aguirre-Juarez's counsel believed that deportation would be less likely if she avoided a one-year sentence. He thus requested a 364-day sentence rather than the 365-day sentence the prosecutor requested. The district court imposed a 364-day sentence and a $200 fine. Aguirre-Juarez had already served fourteen days. The district court suspended the remaining 350 days and released Aguirre-Juarez.

¶5     Though both parties expected a guilty plea to carry deportation consequences, apparently neither foresaw that the plea could interfere with Aguirre-Juarez's readmission to the United States. But in fact, Aguirre-Juarez's 364-day sentence made her permanently inadmissible: a subsection of the INA makes an adult alien convicted of a crime of "moral turpitude" and sentenced to incarceration for six months or more "ineligible to be admitted to the United States." *See* 8 U.S.C. § 1182(a)(2)(A)(i)–(ii) (2006).

¶6     On appeal, Aguirre-Juarez contends that the Sixth Amendment entitled her to an attorney aware of this subsection of the Act and capable of negotiating a plea bargain to circumvent it. In determining a claim of ineffective assistance of counsel raised for the first time on appeal, "we must decide whether [the] defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Tennyson*, 850 P.2d 461, 466 (Utah Ct. App. 1993); *see also State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

¶7     *Strickland v. Washington* and *Padilla v. Kentucky* control. *Strickland* provides the two-part framework for ineffective-assistance-of-counsel claims:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal . . . has two components. First, the defendant must show that counsel's performance was

> deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense.

466 U.S. 668, 687 (1984). *Padilla* applies *Strickland*'s deficient-performance prong in the context of deportation. When the "deportation consequence" of a defendant's plea or conviction "is truly clear," counsel's "duty to give correct advice is equally clear." *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010). But the Supreme Court, acknowledging that "[i]mmigration law can be complex," also concluded that there will "undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain." *Id.* In those cases, counsel's duty "is more limited": "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* Thus, to satisfy *Strickland* in a deportation context, an attorney who is not "well versed" in immigration law need only "say something about the possibility of deportation." *Id.* at 369 & n.10.

¶8    A court applying *Strickland* may begin by addressing either prong: deficient performance or prejudice. *Id.* at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*; *see also, e.g.*, *State v. Harris*, 2012 UT 77, ¶¶ 31–34, 289 P.3d 591. Because it is easier to dispose of Aguirre-Juarez's ineffectiveness claim on the ground of lack of sufficient prejudice, we follow that course here. *Strickland*, 466 U.S. at 697.

¶9    Aguirre-Juarez contends that she was prejudiced by her counsel's plea advice because he advised her to accept a plea that included 364 days of jail time. Had she received a sentence of six months or less, she argues, she would not be barred from re-entry into the United States under INA section 1182(a)(2)(A)(i). That subsection declares inadmissible "any alien convicted of . . . acts which constitute the essential elements of . . . a crime involving moral turpitude." 8 U.S.C. § 1182(a)(2)(A)(i)(I) (2006). But section 1182(a)(2)(A)(ii) contains an exception: the moral-turpitude

provision does "not apply to an alien who committed only one crime if . . . the maximum penalty possible for the crime of which the alien was convicted . . . did not exceed imprisonment for one year and . . . the alien was not sentenced to a term of imprisonment in excess of 6 months." *Id.* § 1182(a)(2)(A)(ii)(II).

¶10    Crimes of fraud, such as the one Aguirre-Juarez pled guilty to, involve moral turpitude. *Jordan v. De George*, 341 U.S. 223, 227–28 (1951). Aguirre–Juarez's 364-day sentence thus makes her inadmissible under section 1182(a)(2)(A)(i). However, as Aguirre-Juarez contends, had she received a sentence of six months or less, the moral-turpitude provision would not have barred her re-entry into the U.S.

¶11    But our inquiry does not end there. The State counters that even if her counsel had negotiated the very plea bargain that Aguirre-Juarez claims any minimally competent defense counsel would have, and thus avoided the moral-turpitude provision's bar to re-entry, a separate subsection of the Act would nevertheless bar her re-entry. Thus, the State argues, she suffered no prejudice in any event.

¶12    INA section 1182(a)(6)(C) declares inadmissible "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure . . . a visa, other documentation, or admission into the United States or *other benefit provided under this Act*." 8 U.S.C. § 1182(a)(6)(C)(i) (emphasis added). The Act referred to occupies sections 1107 through 1537 of title 8, chapter 12 of the U.S. Code. Thus, if Aguirre-Juarez fraudulently sought to obtain any "other benefit" provided by these sections, she is inadmissible and thus could not have been prejudiced by her 364-day plea. The State contends that Aguirre-Juarez received a benefit under chapter 12 when she fraudulently used false papers to obtain employment in Utah. Specifically, the State argues, Aguirre-Juarez received a benefit—the ability to work in Utah—to which she was not entitled under section 1324a of Chapter 12.

¶13    Section 1324a prohibits the hiring of unauthorized aliens. *Id.* § 1324a(a)(1)(A). It specifies that an alien may prove his or her legal qualification for employment by presenting a social security card, a resident alien card (green card), or an alien registration card. *Id.* § 1324a(b). The State argues that Aguirre-Juarez's fraudulent use of a "fake green card," another person's alien registration number, and another person's social security number to obtain employment thus allowed her to receive a benefit under title 8, chapter 12—employment—which she could not have otherwise received absent her misrepresentation.

¶14    The State's analysis finds support in federal case law. The few federal courts to consider the issue have concluded that fraudulent use of section 1324a documentation to obtain employment constitutes an "other benefit" under chapter 12. For example, in *Jaen-Chavez v. United States Attorney General*, the Eleventh Circuit Court of Appeals held that a noncitizen's use of a false social security card to fill out an I-9 employment form constitutes the receipt of an "other benefit" under section 1182(a)(6)(C). *See* 415 F. App'x 964, 969 (11th Cir. 2011).[4] Similarly, in *Ighekpe v. Gonzales*, a federal district court adopted a magistrate's conclusion that a noncitizen making a "false statement of citizenship on an I-9 form for the purpose of obtaining employment" has received an "other benefit" under section 1182(a)(6)(C)(i). No. 3-05-CV-0479-P, 2005 WL 1421396, at *2 (N.D. Tex., June 16, 2005).

¶15    As in *Ighekpe*, the purpose of Aguirre-Juarez's identity fraud was to obtain employment. Under the foregoing federal case law, the "other benefits" section of the INA, section 1182(a)(6)(C)(i), would thus prevent Aguirre-Juarez from re-entering the United

---

4. *Jaen-Chavez* relies on section 1182(a)(6)(C)(ii), which addresses misrepresentations of citizenship. Section 1182(a)(6)(C)(i), which the State relies on here, addresses misrepresentations of legal residency.

States even if the "moral turpitude" section, section 1182(a)(2)(A)(i)(I), did not.

¶16 Accordingly, even if trial counsel had sought a six-month sentence, and the prosecutor had recommended it, and the trial court had followed that recommendation, we cannot agree that Aguirre-Juarez would today be eligible to re-enter the United States. Consequently, Aguirre-Juarez cannot demonstrate prejudice, and her Sixth Amendment claim fails.

¶17 Affirmed.

──────────