# 2015 UT App 58

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
WILBERT SANCHEZ,
Defendant and Appellant.

Memorandum Decision
No. 20121030-CA
Filed March 12, 2015

Fifth District Court, St. George Department
The Honorable John J. Walton
No. 121501257

Kenneth L. Combs, Attorney for Appellant

Sean D. Reyes, Brett J. DelPorto, and Paul F. Graf,
Attorneys for Appellee

JUDGE KATE A. TOOMEY authored this Memorandum Decision, in
which JUDGE GREGORY K. ORME concurred. JUDGE MICHELE M.
CHRISTIANSEN concurred, with opinion.

TOOMEY, Judge:

¶1     Wilbert Sanchez appeals from the sentence imposed on
him by the trial court after he was convicted of unlawful
possession of another's identification documents, a class A
misdemeanor. We affirm.

¶2     Sanchez was charged with one count of identity fraud
and one count of forgery based on his alleged use of another

person's social security number to obtain employment.[1] A jury later acquitted Sanchez of the identity fraud and forgery charges, instead finding him guilty of a lesser offense of unlawful possession of another's identification document. Sanchez then filed a motion pursuant to Utah Code section 76-3-402(1) to reduce the conviction. *See* Utah Code Ann. § 76-3-402(1) (LexisNexis 2012) (providing the trial court discretion to reduce a conviction to the next lower degree of offense if it concludes the conviction would be unduly harsh). Specifically, Sanchez asked the court to reduce his conviction to a class B misdemeanor and sentence him within the corresponding penalty range. *See id.* § 76-3-204(2) (providing that a class B misdemeanor is punishable by imprisonment for a term not exceeding six months). At the sentencing hearing, the prosecutor asked the trial court to sentence Sanchez to 365 days in jail, the maximum sentence for a class A misdemeanor. *See id.* § 76-3-204(1). Sanchez responded that if the court refused to reduce his conviction and sentenced him to 365 days in jail, he would be deported because of his immigration status. Sanchez therefore urged the trial court to sentence him to 180 days in jail based on his counsel's understanding that such a sentence would give Sanchez a better chance of remaining in the country.

¶3    The trial court judge ultimately denied Sanchez's motion:

> [U]nder the circumstances—I think that I would be substituting my own sympathies for Mr. Sanchez'[s] situation rather than applying the law in an appropriate manner if I were to rule or find

---

1. Both of these counts in the information are third degree felonies. *See* Utah Code Ann. § 76-6-1102(3)(a) (LexisNexis Supp. 2014); *id.* § 76-6-502 (LexisNexis 2012). Unlawful possession of another's identification document is a class A misdemeanor. *See id.* § 76-6-1105 (LexisNexis 2012).

that it would be unduly harsh or severe to sentence Mr. Sanchez to the standard sentence for a Class A Misdemeanor.

The trial court thereafter sentenced Sanchez to a term of 365 days in jail. It also imposed a $2,500 fine, stayed the execution of sentence, and placed Sanchez on probation for two years. Among other things, the conditions of Sanchez's probation required him to serve a term of 100 days in the county jail with an early release should he be deported, and an order was entered requiring Sanchez's release to Immigration and Customs Enforcement agents for deportation. Sanchez appeals.

¶4    On appeal, Sanchez raises three arguments challenging his sentence. Specifically, he argues that the trial court (1) was unduly harsh and abused its discretion when it denied his request for a section 402(1) reduction, (2) abused its discretion when it failed to take into account his potential deportation when determining his sentence, and (3) unlawfully delegated its sentencing decision to the prosecutor.

¶5    The decision of whether to grant a section 402(1) reduction rests within the discretion of the trial court. *See State v. Perea*, 2013 UT 68, ¶ 114, 322 P.3d 624; *see also State v. Boyd*, 2001 UT 30, ¶¶ 30–31, 25 P.3d 985. We afford trial courts "wide latitude and discretion in sentencing." *State v. Killpack*, 2008 UT 49, ¶ 58, 191 P.3d 17 (citation and internal quotation marks omitted). Accordingly, "[w]e will not overturn a sentence unless it exceeds statutory or constitutional limits, the judge failed to consider all the legally relevant factors, or the actions of the judge were so inherently unfair as to constitute abuse of discretion." *State v. Sotolongo*, 2003 UT App 214, ¶ 3, 73 P.3d 991 (citations and internal quotation marks omitted); *see also Boyd*, 2001 UT 30, ¶ 31.

¶6    First, Sanchez argues the trial court exceeded its discretion in denying his request for a section 402(1) reduction

because a conviction for a class A misdemeanor would be unduly harsh and would subject him to deportation. Section 76-3-402(1) provides,

> If at the time of sentencing the court, having regard to the nature and circumstances of the offense of which the defendant was found guilty and to the history and character of the defendant, and after having given any victims present at the sentencing and the prosecuting attorney an opportunity to be heard, concludes it would be unduly harsh to record the conviction as being for that degree of offense established by statute, the court may enter a judgment of conviction for the next lower degree of offense and impose sentence accordingly.

Utah Code Ann. § 76-3-402(1).

¶7    In analyzing Sanchez's motion to reduce his conviction, the trial court considered the nature of his crime, his particular circumstances, and the consequences of his conviction. Specifically, the court noted that, although he is "a hard worker," Sanchez committed "a serious crime, using someone else's Social Security Number" and had "already substantially benefited by not having been convicted of a felony." Moreover, it considered that there was no guarantee that Sanchez was going to be deported with a class A misdemeanor conviction or a 365-day jail sentence. The trial court judge determined that the conviction for a class A misdemeanor was not unduly harsh to Sanchez, stating,

> I don't think that the Section 402 argument is a hard one, Counsel, because given—I heard the facts of the case, and I just could not find under the circumstances—and I've given it a lot [of] thought—that I should reduce it because I can't find that it would be unduly harsh or severe to

enter sentence at the level of a standard sentence
for a Class A Misdemeanor.

Based on our review of the record, we conclude the trial court acted within its discretion in ruling that the class A misdemeanor conviction was not unduly harsh under the circumstances of this case.

¶8      Second, Sanchez contends the trial court should have taken into account his potential deportation when determining his sentence. In essence, Sanchez argues that the immigration consequences resulting from a 365-day jail sentence should have been weighed as a mitigating factor and should have led the trial court to sentence him to a shorter jail term.

¶9      In general, trial courts base sentencing decisions on "the totality of the circumstances." *Perea*, 2013 UT 68, ¶ 117. "Although courts must consider all legally relevant factors in making a sentencing decision, not all aggravating and mitigating factors are equally important, and [o]ne factor in mitigation or aggravation may weigh more than several factors on the opposite scale." *Killpack*, 2008 UT 49, ¶ 59 (alteration in original) (citation and internal quotation marks omitted).

¶10      In this case, the trial court considered the totality of the circumstances when it made its sentencing decision. In doing so, the court contemplated whether to give weight to Sanchez's potential deportation but concluded that it should sentence Sanchez without regard to the immigration ramifications. Nevertheless, the judge opined that Sanchez's deportation would be "unfortunate," and the judge expressed "sympathies for Mr. Sanchez'[s] situation" and hope for "substantial comprehensive immigration reform that would deal with these situations."

¶11      Although the trial court evidently entertained the idea of sentencing Sanchez to less than the maximum standard 365-day

jail sentence, it explained that the "only reason" to do that would be because the trial court was "not sure that it is fair that Mr. Sanchez be deported."[2] But because doing so would be "making a different kind of sentence for Mr. Sanchez than [the court does] for almost everyone else who's committed a Class A Misdemeanor," the trial court refused to deviate from its normal practice of imposing the maximum standard sentence of 365 days in jail. Under these circumstances, the trial court did not exceed its discretion when it sentenced Sanchez.[3]

---

2. Even if the trial court had exceeded its discretion when it sentenced Sanchez to 365 days in jail, it would be harmless because the actual sentence imposed by the court is irrelevant to Sanchez's potential for deportation. As Sanchez notes, "[a] person who is in the country illegally is subject to deportation when convicted of certain crimes as set forth in 8 U.S.C.A. § 1227." Specifically, he cites the Immigration and Nationality Act: "Any alien who . . . is convicted of a crime involving moral turpitude . . . and . . . is convicted of a crime for which a sentence of one year or longer *may* be imposed, is deportable." 8 U.S.C. § 1227(a)(2)(A)(i) (2012) (emphasis added). Accordingly, because a class A misdemeanor is a crime for which a sentence of one year may be imposed and the trial court did not abuse its discretion in denying Sanchez's request for a section 402(1) reduction, Sanchez's actual sentence is irrelevant to the potential for deportation under the Immigration and Nationality Act. *See id.*; *see also* Utah Code Ann. § 76-3-204(1) (LexisNexis 2012).

3. Sanchez cites two cases in support of his argument that the trial court should have taken into account his potential deportation when determining his sentence. In the first case, *Padilla v. Kentucky*, 559 U.S. 356 (2010), the United States Supreme Court held that because "deportation is an integral part . . . of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes," *id.* at 364, "counsel must

(continued...)

¶12    Finally, Sanchez asserts that the trial court unlawfully delegated its sentencing decision to the prosecutor. In support, Sanchez directs us to a point during the sentencing hearing when the trial judge explained that "99.9 percent of the time," he sentences defendants to the maximum standard sentence for a class A misdemeanor and that although he had deviated from that a "time or two," he had "never done it . . . unless it was stipulated by Counsel." Based on these statements, the prosecutor's refusal to stipulate to a lesser sentence, and the trial judge's imposition of the maximum 365-day jail sentence, Sanchez asserts the trial judge improperly required a stipulation from the prosecutor before he would impose a shorter sentence, thereby delegating his sentencing duty. The State counters that because the judge "simply followed [his] ordinary practice of not reducing the sentence for a class A misdemeanor unless the prosecutor stipulated," the court did not delegate its judicial authority. We agree with the State.

---

(…continued)

inform her client whether his plea carries a risk of deportation," *id.* at 360, 373–74. But *Padilla* does not require trial courts to consider immigration status during sentencing. *See id.* In the second case, *United States v. Jefferson*, 925 F.2d 1242 (10th Cir. 1991), the Tenth Circuit determined that a district court committed reversible error during the sentencing phase of a trial when it stated that it did not have the discretion to depart from the United States Sentencing Guidelines. *Id.* at 1247, 1259–60. According to Sanchez, *Jefferson* buttresses his claim that the trial court erroneously believed it could not exercise any discretion to sentence Sanchez to less than the maximum standard sentence. But because the trial court in this case did not state that it lacked discretion and because *Jefferson* does not address sentencing under Utah law, *Jefferson* is inapposite. *See id.* at 1259–60. Consequently, Sanchez's reliance on these cases is misplaced.

¶13 "While sentencing courts take into account all the relevant circumstances, . . . the recommendations of the prosecutor or any other party are not binding upon the court." *State v. Moreau*, 2011 UT App 109, ¶ 11, 255 P.3d 689 (citations and internal quotation marks omitted); *cf.* Utah R. Crim. P. 11(h)(2) ("If sentencing recommendations are allowed by the court, the court shall advise the defendant personally that any recommendation as to sentence is not binding on the court."). In this case, the sentencing hearing transcript does not support Sanchez's claim that the prosecutor's recommendation dictated the trial court's ultimate decision. The relevant portion of the transcript is as follows:

> [DEFENSE COUNSEL]: Your Honor, I'm not aware of any law that says the Court cannot sentence a person from zero to 365 [days for a class A misdemeanor].
>
> THE COURT: Right, I agree with you. But 99.9 percent of the time, I don't do that, and I question, given the fact that Mr. Sanchez has been convicted of a Class A Misdemeanor, if it's appropriate for me to enter a different kind of a sentence than I do 99.9 percent of the time . . . and the only reason that I would be doing that . . . would be to say it's because I'm not sure that it's fair that Mr. Sanchez be deported. But that's not my decision.
>
> . . . .
>
> [DEFENSE COUNSEL]: . . . I've seen a couple of judges here in this district . . . vary from the practice [but] most all do the same thing the Court does, that's 99.9 percent, probably.

THE COURT: I'll tell you, Counsel, I've done it a time or two. I've never done it, I don't believe, unless it was stipulated by Counsel.

. . . .

THE COURT: [Prosecutor], what about it? You started with the position that [the sentence] ought to be 365 days because presumably that means that Mr. Sanchez would be deported.

[PROSECUTOR]: Well, that's the basis for the position that (Inaudible). . . . I've come to the same conclusion you have . . . that is the normal Class A Misdemeanor sentence was 365 days.

. . . .

THE COURT: What opposition would you have to the Court exercising its discretion to, say, 360 days as a statutory sentence instead of 365?

[PROSECUTOR]: I recognize that you have had (Inaudible). I've even heard of judges saying 364 days.

THE COURT: Yes.

[PROSECUTOR]: I would oppose that; I would ask for 365 days.

THE COURT: Okay.

The trial court then sentenced Sanchez to the maximum standard sentence of 365 days, explaining that imposing the sentence was "the appropriate thing to do from a judicial standpoint." When the transcript is read as a whole, the trial court's reference to a

stipulation was only an explanation of its usual practice of refusing to depart from maximum standard sentences absent a stipulation from the parties. We therefore do not agree with Sanchez that the trial court delegated its sentencing authority to the prosecutor.

¶14　In conclusion, the trial court did not exceed its discretion in sentencing Sanchez or in denying Sanchez's motion to reduce his conviction. Moreover, the court did not improperly delegate its sentencing authority to the prosecutor. Accordingly, we affirm Sanchez's sentence.

_____

CHRISTIANSEN, Judge (concurring):

¶15　I agree with the lead opinion's conclusion that the trial court committed no reversible error in sentencing Sanchez, and I therefore concur in affirming his sentence. However, I write separately because I believe a point the lead opinion addresses only briefly in a footnote is dispositive of one of the principal issues raised by Sanchez on appeal. *See supra* note 2. The critical inquiry in examining the trial court's exercise of its discretion here is whether the trial court properly denied Sanchez's motion for a section 402 reduction, not whether the trial court abused its discretion in imposing Sanchez's actual sentence. This is because the only prejudice Sanchez is claiming to have suffered as a result of the trial court's sentencing decision is his classification as deportable under title 8, section 1227 of the United States Code—a classification that is completely unaffected by the actual sentence imposed by the trial court.

¶16　Sanchez was convicted of unlawful possession of another's identification documents, a class A misdemeanor. Utah Code Ann. § 76-6-1105(2)(a) (LexisNexis 2012). This offense is subject to a sentence of imprisonment for a term not exceeding one year. *Id.* § 76-3-204. Before he was sentenced, Sanchez moved the court for a reduction under Utah Code section 76-3-402,

seeking reduction of his conviction to a class B misdemeanor punishable by up to six months of imprisonment. *Id.* The trial court denied that motion, concluding that entering the conviction as a class A misdemeanor would not be "unduly harsh." *See id.* § 76-3-402(1).

¶17    I agree with the lead opinion that the trial court did not abuse its discretion in denying Sanchez's motion for a section 402 reduction. Sanchez argued to the trial court that entering his conviction as a class A misdemeanor would be unduly harsh because it would subject him to deportation. A review of the record demonstrates that the trial court acknowledged Sanchez's immigration status, the nature of Sanchez's offense, and Sanchez's character and personal circumstances in ruling on the motion. Sanchez has not demonstrated that the trial court failed to consider any legally relevant sentencing factors or exceeded statutory or constitutional limits in denying his motion. Given the deference with which we review a trial court's decision on a section 402 motion, I cannot say that "no reasonable [person] would take the view adopted by the trial court" and therefore cannot conclude that the trial court abused its discretion in denying Sanchez's motion for a reduction of his conviction. *See State v. Moreau*, 2011 UT App 109, ¶ 6, 255 P.3d 689 (alteration in original) (citation and internal quotation marks omitted).

¶18    Having determined that the trial court properly denied Sanchez's motion for a section 402 reduction, I would not reach Sanchez's argument that the trial court abused its discretion in sentencing him. Rather, I would affirm because any error in the trial court's actual sentencing decision is harmless with respect to the only prejudice that Sanchez has asserted on appeal—his classification as deportable under title 8, section 1227 of the United States Code. Federal law provides that an alien convicted of a crime involving moral turpitude "for which a sentence of one year or longer may be imposed" is deportable. 8 U.S.C. § 1227(a)(2)(A)(i) (2012). Sanchez argues that "the length of the sentence" imposed by the trial court would "impact whether or

not [Sanchez] can possibly be deported" and that it was therefore "vital for the trial court to consider possible deportation when imposing his sentence." However, it is the maximum sentence permitted for a conviction—not the actual sentence imposed—that determines whether a defendant is deportable under this section. *See id.* § 1227(a)(2)(A)(i)(II).[1]

¶19    A defendant convicted of a class A misdemeanor may be sentenced to imprisonment for up to one year. Utah Code Ann. § 76-3-204. Thus, once Sanchez was convicted of a class A misdemeanor and the trial court entered the conviction at that level, he "could have been deported regardless of [his] sentence, because the Immigration and Nationality Act . . . classifies as deportable any alien convicted of a crime of moral turpitude 'for which a sentence of one year or longer *may* be imposed.'" *State v. Aguirre-Juarez*, 2014 UT App 212, ¶ 3, 335 P.3d 896 (quoting 8 U.S.C. § 1227(a)(2)(A)(i) (2006)). Whatever weight the trial court gave to the potential immigration consequences of Sanchez's sentence simply does not matter, because the actual term of imprisonment ordered by the trial court is irrelevant to Sanchez's eligibility for deportation. Any error or abuse of

---

1. Sanchez's argument appears to concede, and I assume for purposes of this analysis, that a conviction for unlawful possession of another's identification documents is a crime of moral turpitude. This view appears consistent with the Supreme Court's observation that "crimes involving fraud have universally been held to involve moral turpitude." *Jordan v. De George*, 341 U.S. 223, 228 (1951). However, I would not decide this issue, because it would not affect the outcome of my analysis. Even if the crime of unlawful possession of another's identification is not one of moral turpitude, Sanchez would simply not be classified as deportable under this statute, and the sentence imposed by the trial court would still have no effect on that classification.

discretion in the trial court's selection of the period of incarceration is therefore harmless with respect to whether Sanchez is deportable.[2] As Sanchez has raised no other claim of prejudice on appeal, I would affirm on that basis.

————————

2. This court has recognized that the actual sentence imposed by the trial court may have other immigration consequences. Notably, "an adult alien convicted of a crime of 'moral turpitude' and sentenced to incarceration for six months or more" is rendered permanently inadmissible to the United States. *State v. Aguirre-Juarez*, 2014 UT App 212, ¶ 5, 335 P.3d 896 (quoting 8 U.S.C. § 1182(a)(2)(A)(i)–(ii) (2006)). However, Sanchez has argued only the deportation issue and has raised no other immigration issue below or on appeal.