2015 UT App 133

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
CRISTIAN A. ALZAGA,
Defendant and Appellant.

Opinion
No. 20120742-CA
Filed May 29, 2015

Third District Court, West Jordan Department
The Honorable Bruce C. Lubeck
No. 101401263

Samuel P. Newton, Attorney for Appellant

Sean D. Reyes and Jeanne B. Inouye, Attorneys
for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES GREGORY K. ORME and STEPHEN L. ROTH concurred.

VOROS, Judge:

¶1     Cristian A. Alzaga was convicted of murder, aggravated assault, and aggravated robbery. All the crimes occurred in connection with a drug deal under a bridge on the Jordan Parkway. The State claimed that the victims were at the bridge to sell marijuana; Alzaga claimed they were there to buy heroin. On appeal Alzaga challenges certain of the trial court's evidentiary rulings, its instructions to the jury on self-defense, and its denial of his motion for a new trial. He also contends that his trial counsel rendered constitutionally ineffective assistance. We affirm.

## BACKGROUND[1]

### *The Drug Deal*

¶2     Hannah and her boyfriend, Mark,[2] lived together in a tent near the Jordan River Parkway Trail in Midvale, Utah. The two scraped by; each sold marijuana, while Mark received food stamps and donated his blood plasma.

¶3     In May 2010, one of the couple's regular customers contacted Hannah to purchase an ounce of marijuana. Hannah and Mark agreed to meet the customer for the sale at a spot where they had met before, on a footbridge by the Jordan River near 3900 South (the Footbridge). When Mark and Hannah arrived for the sale, they crossed the Footbridge and spotted the customer. With him was "a bigger guy" who acted as a lookout. Mark also spotted a third man talking on a cell phone and pacing back and forth on a larger bridge spanning the Jordan River nearby (the Jordan River Bridge). Mark described this third man, the defendant, as having spiked black hair, "kind of crown shaped," and wearing a white shirt. Mark did not immediately connect Alzaga with the customer and the lookout. However, Mark felt concerned that the lookout had accompanied the customer to the drug deal; Mark and the customer "had kind of an agreement that you didn't bring anybody with you when you came to buy marijuana," because

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (citation and internal quotation marks omitted).

2. We use pseudonyms to protect the privacy of the victims and their families.

"anything could happen when you meet new people." But Hannah felt comfortable because she had known the customer for "[p]retty much her entire life."

¶4    Mark and Hannah decided to go ahead with the deal. The customer asked Mark and Hannah to weigh the marijuana, and Hannah climbed down onto a ledge under the Footbridge to do so. The customer stood against a post above Hannah, and the lookout made "sure that nobody was coming while [Hannah] weighed the marijuana." Alzaga approached, still talking on his cell phone. When he and the customer argued briefly, Alzaga pulled what appeared to be a gun and pointed it at the customer. The customer looked under the Footbridge at Hannah; Alzaga then pointed the gun at her and said, "You give me all your shit."

*The Stabbings*

¶5    Hannah backed up under the Footbridge. Alzaga jumped down after her, and Mark followed. Mark saw that Alzaga and Hannah "were kind of close together" and saw Hannah jump back from Alzaga "like she was trying to get away from something." Mark then grabbed Alzaga by the shoulder from behind. Alzaga wheeled around, pointed the gun at Mark, and said, "You can give me all your shit, too." Mark thought that the gun looked fake and batted it away from Alzaga.[3] But Alzaga also had a knife. Alzaga slashed at Mark, who jumped back and yelled at Hannah to run. Hannah walked slowly up the hill and said that she had been stabbed. Both Alzaga and Mark ran toward Hannah. Mark then heard the customer yell, "Forget it. It's done. Let's go. Let's go. Let's go." The customer and the lookout fled the scene toward 3900 South.

---

3. Police later found the gun in some brush by the path that crossed the Footbridge. It was in fact a toy gun.

¶6    Alzaga reached Hannah before Mark did and began pulling at her purse. Mark caught up to Hannah and Alzaga and stepped between them to shield Hannah from Alzaga. Mark told Hannah to let go of the purse. As Mark and Alzaga "struggled over the purse" Alzaga slashed at Mark and struck him in the eye. Alzaga had wounded both Mark and Hannah; Mark's eye was swollen shut, and Hannah told Mark that she could not breathe. Mark then relinquished the purse to help Hannah, and Alzaga took off running. Hannah threw away the marijuana she had in her pocket and lay down on the ground, struggling to breathe. Mark grabbed Hannah's phone and dialed 911. Hannah, eighteen years old, died at the hospital of a stab wound to the abdomen.

*Alzaga's Version of Events*

¶7    Alzaga described quite a different encounter. He maintained that he did not kill Hannah and that he stabbed Mark in self-defense. Alzaga testified that he, the customer, and the lookout agreed to meet Mark and Hannah at the Footbridge to sell them a large amount—fifty-two grams—of heroin. The three drove together to the Jordan River Parkway Trail, walked to the Footbridge, and after meeting up with Mark and Hannah, Alzaga weighed a plastic-wrapped package of heroin the size of a tennis ball and worth $6,000. After Alzaga confirmed its weight, he claimed that Mark suddenly "just grab[bed] the ball of heroin" and handed it to Hannah, who "start[ed] running."

¶8    Alzaga then testified that Mark began punching him on the left side of his face and neck. As Mark assaulted him, Alzaga observed the customer running across the Footbridge and "noticed [the lookout] chasing after [Hannah]." Alzaga told the jury that he was "high on [e]cstasy" and "just felt terrified" by Mark's assault. Alzaga absorbed Mark's punches for a time but then started to fall over, and "that's when" Alzaga "felt the knife" in his pocket. Alzaga then pulled the knife out of his pocket, and as Mark punched him, he "countered back with a

right hook" and slashed Mark in the eye. Mark backed away while the lookout returned with Hannah's purse in hand. The lookout gave the purse to Alzaga, and both fled the scene.

¶9 Alzaga was convicted of murder, a first-degree felony, Utah Code Ann. § 76-5-203(3) (LexisNexis Supp. 2010); aggravated robbery, a first-degree felony, *id.* § 76-6-302 (LexisNexis 2008); and aggravated assault, a second-degree felony, *id.* § 76-5-103. He appeals.

ISSUES

¶10 First, Alzaga contends that the trial court erroneously admitted Mark's testimony that Hannah had a life philosophy of peace and nonviolence and that she consumed no drugs other than marijuana.

¶11 Second, Alzaga contends that the trial court erroneously excluded evidence pertaining to the details of Mark's prior drug convictions.

¶12 Third, Alzaga contends that the trial court erroneously admitted a prison recording of a conversation between Alzaga and his girlfriend during which he made derogatory remarks about Hannah and did not deny killing her.

¶13 Fourth, Alzaga contends that the trial court erroneously admitted photographs of the crime scene taken in February 2012 that did not accurately reflect the view of the scene when the crimes occurred in May 2010.

¶14 Fifth, Alzaga contends that the trial court erroneously instructed the jury on the standard for self-defense.

¶15 Sixth, Alzaga contends that his trial counsel ineffectively failed to present expert testimony challenging Mark's eyewitness identification of him.

¶16 Finally, Alzaga contends that the trial court erroneously denied his motion for a new trial, which he made on the basis of newly discovered exculpatory evidence.

ANALYSIS

I. Hannah's Character for Peacefulness

¶17 Alzaga contends that the trial court "abused its discretion when it admitted evidence of [Hannah's] character for peacefulness and aversion to serious drugs." Alzaga argues that this evidence was inadmissible character evidence under rules 404 and 405 of the Utah Rules of Evidence. In the alternative, Alzaga contends that the trial court plainly erred in admitting the evidence. The State counters that Alzaga inadequately briefed his plain error claim and that, in any event, he fails to carry the burden of persuasion because the error, if any, was neither obvious nor prejudicial.

¶18 "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in conformity with the character or trait." Utah R. Evid. 404(a)(1). Rule 404(a)(2) sets out exceptions to this general prohibition that apply to defendants and alleged victims in criminal cases:

> (A) a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it;
> (B) subject to the limitations in Rule 412, a defendant may offer evidence of an alleged victim's pertinent trait, and if the evidence is admitted, the prosecutor may:
>> i. offer evidence to rebut it; and

> ii. offer evidence of the defendant's same trait; and
>
> (C) in a homicide case, the prosecutor may offer evidence of the alleged victim's trait of peacefulness to rebut evidence that the victim was the first aggressor.

*Id.* R. 404(a)(2). Evidence of a person's character may be introduced by opinion or reputation testimony:

> When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion. On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct.

*Id.* R. 405(a).

¶19 At trial, Mark testified that Hannah was "just like kind of a modern-day hippie"; that she "smoked weed, yes, but that's the only drug she did"; and that she did not "even want to try anything else like hallucinogens, nothing else like that." Mark also testified that Hannah "loved the peace sign" and that she believed in the philosophy of "PLUR . . . peace, love, unity, and respect." Mark added that he had a peace-sign tattoo on his shoulder and that "[e]very time [he] would find something with a peace sign on it, [he] would buy it for her."

¶20 Alzaga argues that Mark's testimony violated rule 404(a)(1) because it constituted evidence of Hannah's character trait offered to prove that she acted in conformity with that trait. Alzaga further argues that Mark's testimony violated rule 404(a)(2) because "[Mark] was the first witness to testify, and . . . Alzaga's opening statement could not open the door to the introduction of positive character evidence." Because opening

statements "do not constitute evidence and cannot open the door to character evidence," *State v. Leber*, 2009 UT 59, ¶ 16, 216 P.3d 964, Alzaga maintains that the trial court erred in admitting rehabilitative character evidence before Hannah's character was attacked. Alzaga further argues that Mark's testimony violated rule 405(a) because "the State did not offer reputation or opinion testimony, but rather, specific instances of . . . [Hannah's] conduct."

¶21 The State responds that Alzaga failed to preserve this claim in the trial court. To preserve an issue for appeal, "the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (citation and internal quotation marks omitted). "[I]f a party makes an objection at trial based on one ground, this objection does not preserve for appeal any alterative grounds for objection." *State v. Low*, 2008 UT 58, ¶ 17, 192 P.3d 867. Counsel objected to Mark's testimony on relevance grounds, but Alzaga does not argue relevance on appeal.[4] He instead argues that his relevance objection was sufficient to preserve his rule 404 and rule 405 claims and that, in any event, the trial court plainly erred in admitting the character evidence.

¶22 We agree with the State that Alzaga's objection on relevance grounds did not preserve his appellate claim. His objection did not convey to the trial court that Alzaga believed the testimony, though relevant, constituted improper character evidence. Accordingly, we analyze his rule 404 and rule 405 claims under the plain error standard.

---

4. In fact, the reply brief acknowledges that if, as Mark testified, Hannah did not use hard drugs, "then she was less likely to have arranged a heroin transaction, as Mr. Alzaga testified."

¶23 To demonstrate plain error, a defendant must establish that (1) the trial court committed error, (2) the error should have been obvious to the court, and (3) the error was harmful. *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). "To establish that the error should have been obvious to the trial court, [an appellant] must show that the law governing the error was clear at the time the alleged error was made." *State v. Dean*, 2004 UT 63, ¶ 16, 95 P.3d 276; *State v. Ross*, 951 P.2d 236, 239 (Utah Ct. App. 1997). Thus, an obvious error is one that contravenes "settled appellate law," *Ross*, 951 P.2d at 239, or "the plain language of the relevant statute," *Low*, 2008 UT 58, ¶ 41. An error is prejudicial if "absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *Dunn*, 850 P.2d at 1208–09 (footnote omitted).

¶24 Alzaga has not established plain error. First, any possible error in admitting testimony that Hannah smoked marijuana was not obvious under rule 404(a)(1). Rule 404(a)(1) declares evidence "of a person's character or character trait" offered "to prove that on a particular occasion the person acted in conformity with the character or trait" inadmissible. Utah R. Evid. 404(a)(1). Here, we do not think it obvious that testimony that Hannah "smoked weed, yes, but that's the only drug she did" describes a "character trait." And even if it did, the obviously prohibited use would be to show that Hannah acted in conformity with this character trait on this occasion. Acting in conformity with the "character trait" of smoking marijuana would be to smoke marijuana. But the State's theory was not that Hannah smoked marijuana on this or any other occasion but that she went to the meeting place to sell marijuana. And it is not obvious that selling marijuana constitutes acting in conformity with the "character trait" of smoking it. *See* R. Collin Mangrum & Dee Benson, *Mangrum & Benson on Utah Evidence* 191–92 (2014–2015 ed.). Accordingly, whether the State did or did not "offer evidence of an alleged victim's pertinent trait" under rule 404(a)(2)(B) is of no moment.

¶25     Even if admission of the testimony was obvious error, Alzaga has not shown prejudice. At most, the testimony that Hannah smoked marijuana corroborated more directly relevant testimony. Mark testified without objection that he and Hannah dealt marijuana and that they went to the rendezvous that day to sell some to the customer. Given this direct evidence that Hannah and Mark sold marijuana, the admission of additional evidence that Hannah smoked marijuana, from which the jury might infer that Hannah also sold marijuana, does not undermine our confidence in the verdict. *See Dunn*, 850 P.2d at 1208–09.

¶26     The same is true for testimony that Hannah did not use other drugs, i.e. heroin. It is far from obvious that not using heroin is a "character trait" and that not arranging to buy heroin constituted acting in conformity with that character trait on this occasion. Nor has Alzaga demonstrated a reasonable likelihood of a more favorable trial outcome absent testimony that Hannah "smoked weed, yes, but that's the only drug she did."

¶27     Finally, we cannot agree that Mark's testimony that Hannah's "philosophy of life was PLUR, . . . peace, love, unity and respect" obviously violated rule 404(a). While this testimony may well describe a character trait, Alzaga has not shown that the State offered the testimony to prove that Hannah acted in conformity with that character trait on a particular occasion. While the defense argued that Mark attacked Alzaga, no one claimed that Hannah acted other than peacefully throughout the encounter.[5]

---

5. On appeal, Alzaga does not challenge Mark's testimony that he shared Hannah's philosophy of life. Instead, Alzaga argues that the trial court abused its discretion "when it admitted evidence of [Hannah's] character for peacefulness and aversion

(continued...)

¶28    In sum, the challenged testimony was not obviously inadmissible, but even if it had been, we cannot say that this evidence undermines our confidence in the verdict. *See id.*

## II. Mark's Prior Drug Convictions

¶29    Alzaga contends that the trial court abused its discretion by excluding the details of Mark's prior drug convictions under rule 609 of the Utah Rules of Evidence.

¶30    On direct examination, Mark admitted to three prior drug convictions, two for possession and one for possession with intent to distribute. After the prosecution rested, defense counsel announced her intention to recall Mark as a witness. Anticipating that defense counsel would inquire further into the specifics of Mark's prior drug convictions—in particular, which drugs formed the bases for those convictions—the prosecutor objected to the inquiry as impermissible under rule 609. Because Mark had "not denied or tried to explain away those [drug] convictions," the prosecutor argued, any inquiry "should be limited to the nature of the crime, the date of the conviction, and the punishment." Defense counsel countered that she wanted to explore the specifics of the drug convictions to impeach Mark.

¶31    The trial court sustained the prosecutor's objection, reasoning that because Mark never testified that he used only marijuana, rule 609 prohibited questions related to the details of his prior drug convictions. Alzaga challenges this ruling on appeal. We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Davis*, 2013 UT App 228, ¶ 13, 311 P.3d 538.

---

(…continued)
to serious drugs" and "when it admitted extensive evidence characterizing [Hannah] as a peaceful hippie who used only marijuana."

We review a trial court's interpretation of evidentiary rules for correctness. *State v. Richardson*, 2013 UT 50, ¶ 32, 308 P.3d 526.

¶32     Rule 609 permits a party to attack a witness's character for truthfulness using evidence of a criminal conviction. Where, as here, Mark's convictions were punishable by imprisonment for more than one year, "the evidence must be admitted, subject to Rule 403, . . . in a criminal case in which the witness is not a defendant." Utah R. Evid. 609(a)(1)(A).

¶33     "Rule 609 does not provide a clear answer to whether an examiner can inquire for impeachment purposes into the nature of the conviction, the details of the crime, or the circumstances of the sentence . . . ." R. Collin Mangrum & Dee Benson, *Mangrum & Benson on Utah Evidence* 485 (2014–2015 ed.). However, caselaw makes clear that "it is permissible to inquire into the fact and nature of the prior conviction, but not the details or circumstances surrounding the event, absent unusual circumstances." *State v. Colwell*, 2000 UT 8, ¶ 33, 994 P.2d 177. Generally, an examining attorney "may not parade the details of the prior crime in front of the jury." *State v. Tucker*, 800 P.2d 819, 822 (Utah Ct. App. 1990).

¶34     But there "is an exception to the Rule 609(a) 'mandate' that inquiry be confined to the nature, date and punishment of past convictions." *Id.* at 823. When a witness on direct examination "attempts to explain away the effect of the conviction or to minimize his guilt," he may be "cross-examined on any facts which are relevant to the direct examination." *Id.* (citation and internal quotation marks omitted). Thus, "when a [witness] seeks to mischaracterize a prior conviction," the examining attorney may use the conviction to contradict the inaccurate testimony. *State v. Levin*, 2004 UT App 396, ¶ 26, 101 P.3d 846; *see also Tucker*, 800 P.2d at 823 (holding that an examining attorney could inquire into specific details of a witness's prior crimes after the witness attempted to minimize his guilt for those crimes).

¶35    Alzaga claims the benefit of this exception. He argues that Mark "conveyed the impression to the jury that both he and . . . [Hannah] were 'modern day hippies' who smoked weed but avoided other drugs" and who "shared a life philosophy of peace and respect." This testimony, Alzaga argues, "left the jury with the impression that [Mark] was a marijuana dealer, and that the prior convictions . . . Alzaga used to impeach [Mark's] credibility likely related to his admitted use and distribution of marijuana." Alzaga argues that the trial court should have allowed counsel to question Mark about the details of the convictions because Mark "mischaracterize[d] a prior conviction." *See Levin*, 2004 UT App 396, ¶ 26. The State counters that Mark did not mislead the jury and therefore the trial court acted within its discretion in excluding the evidence. We agree with the State.

¶36    Mark testified that he had three prior drug convictions. But he never testified that he used only marijuana or otherwise attempted to minimize his culpability for the prior drug convictions. Instead, he testified to only Hannah's drug use, stating that she "smoked weed, yes, but that's the only drug she did," and that she did not "even want to try anything else like hallucinogens, nothing else like that." Mark's silence concerning his own past drug use informs the analysis. In *State v. Levin*, a defendant was charged with marijuana possession. 2004 UT App 396, ¶ 1, 101 P.3d 846. Before trial, the trial court granted the defendant's motion to exclude evidence of a prior conviction for marijuana possession. *Id.* ¶ 5. But the defendant then testified on direct examination, "I don't smoke marijuana, and I haven't smoked marijuana." *Id.* ¶ 24. The trial court then permitted the State to present evidence of his prior conviction because his testimony about not smoking marijuana could have misled the jury. *Id.* We affirmed. *Id.* ¶ 27.

¶37    But here, Mark made no misleading statements about his drug use or drug convictions that would have opened the door to detailed questioning. We do not agree with Alzaga that

Mark's claimed devotion to the principles of "peace, love, unity, and respect" or his peace-sign tattoo said anything about his prior drug convictions. Mark did not "mischaracterize a prior conviction," *see id.* ¶ 26, or "attempt[] to explain away the effect of the conviction or to minimize his guilt," *see Tucker*, 800 P.2d at 823 (citation and internal quotation marks omitted). And his testimony that Hannah was a "modern-day hippie" who only "smoked weed" was too attenuated from Mark's convictions to open the door to further cross-examination concerning them. Accordingly, the trial court acted within its discretion in excluding detailed testimony about Mark's past drug convictions.

¶38 Alzaga next contends that the trial court erred in excluding the details of Mark's prior drug convictions under rules 404(a) and 405(a) of the Utah Rules of Evidence. Alzaga reasons that, while Mark did not directly testify that he used only marijuana, he opened the door by suggesting that purchasing heroin would have been contrary to his and Hannah's past behavior and character. Thus, Alzaga should have been allowed on cross-examination to inquire into specific instances of Mark's drug use to contradict "the misleading testimony concerning his character in this case."

¶39 Rule 404(a) allows a criminal defendant to "offer evidence of an alleged victim's pertinent trait." Utah R. Evid. 404(a)(2)(B). And when the State introduces testimonial evidence of a victim's positive character or character trait, rule 405(a) allows the defendant "to discredit the testimony . . . by 'inquir[ing] into relevant specific instances of conduct' that might contradict" the witness's assessment of the victim's character. *State v. Martin*, 2002 UT 34, ¶ 38, 44 P.3d 805 (alteration in original) (quoting Utah R. Evid. 405(a)). The State maintains that Alzaga did not preserve this claim at trial.

¶40 We agree with the State that Alzaga did not preserve this claim. To preserve an issue for appeal, "the issue must be

presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (citation and internal quotation marks omitted). Among other things, this standard requires that the issue be "specifically raised." *See id.* "[I]f a party makes an objection at trial based on one ground, this objection does not preserve for appeal any alternative grounds for objection." *State v. Low*, 2008 UT 58, ¶ 17, 192 P.3d 867. Because Alzaga "did not preserve his claims before the trial court, he must establish plain error, ineffective assistance of counsel, or exceptional circumstances to warrant review by this court." *State v. Kozlov*, 2012 UT App 114, ¶ 28, 276 P.3d 1207 (citing *Low*, 2008 UT 58, ¶ 19). Alzaga did not object to the trial court's decision to exclude details of Mark's prior drug convictions on rule 404(a) or rule 405(a) grounds. Accordingly, this claim is unpreserved.

¶41    Alzaga argues in the alternative that his trial counsel rendered ineffective assistance by not preserving this claim for appeal. *See State v. Weaver*, 2005 UT 49, ¶ 18, 122 P.3d 566 (identifying plain error and ineffective assistance of counsel as two exceptions to the preservation rule). The State responds that Alzaga's ineffective-assistance-of-counsel claim is inadequately briefed. Again, we agree with the State.

¶42    An appellant's brief "shall contain the contentions and reasons of the appellant with respect to the issues presented, . . . with citations to the authorities, statutes, and parts of the record relied on." Utah R. App. P. 24(a)(9). Briefs require "not just bald citation to authority but development of that authority and reasoned analysis based on that authority." *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998). "An issue is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *State v. Davie*, 2011 UT App 380, ¶ 16, 264 P.3d 770 (citation and internal quotation marks omitted).

¶43   Here, Alzaga has not demonstrated that his trial counsel rendered ineffective assistance. In a footnote, Alzaga states, "To the extent that defense counsel did not specifically argue that Rule 405(a) . . . allowed for the introduction of this evidence she was ineffective." In support, he directs us to sections of his brief in which he discusses error and prejudice as it relates to his discussion of Hannah's character for peacefulness. Even if a generalized reference to other sections of his brief otherwise satisfied our briefing requirements, Alzaga fails to develop any meaningful analysis of his argument as it relates to the evidence at issue—Mark's prior drug convictions. Under the circumstances, Alzaga has inadequately briefed this claim. Accordingly, Alzaga has failed to meet his burden of persuasion on appeal. *See Simmons Media Group, LLC v. Waykar, LLC*, 2014 UT App 145, ¶ 37, 335 P.3d 885.

### III. The Prison Recording

¶44   On appeal, Alzaga challenges the admission of a recording of a prison telephone conversation between himself and his girlfriend. In that call, Alzaga told his girlfriend about his altercation with another inmate who had accused him of killing Hannah:

Alzaga: And then I got into a fuckin' [fight].

. . . .

Girlfriend: Why?

Alzaga: Cause that fool was like, "Hey, you're the one who killed my fuckin' home girl" like, "I don't give a fuck, fool, fuck that bitch," and that fool fuckin' tried to head butt me and shit.

At trial, Alzaga argued that the recording was irrelevant because it had no tendency to prove or disprove the elements of the

crimes charged. In the alternative, he argued that any relevant probative value was substantially outweighed by a risk of unfair prejudice to him because of the language he used. The State responded that the recording was highly probative because by not denying the stabbing, Alzaga gave "nearly a confession to the crime."

¶45    The trial court denied Alzaga's motion to exclude the recording. It ruled that the recording was relevant and that because the language Alzaga used constituted "fairly common talk in lots of venues," the recording was not substantially more prejudicial than probative.

¶46    On appeal, Alzaga argues that the recording was substantially more prejudicial than probative and therefore should have been excluded under rule 403 of the Utah Rules of Evidence. The State counters that the trial court acted within its discretion under rule 403 because the jury "could reasonably have understood [Alzaga's] not denying that he killed [Hannah] to be a tacit admission that he did." Thus, the State argues, the recording's probative value exceeded any risk of unfair prejudice. We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Davis*, 2013 UT App 228, ¶ 13, 311 P.3d 538.

¶47    "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." Utah R. Evid. 403. Alzaga argues that this rule, as applied in *State v. Maurer*, requires that we reverse the trial court's ruling admitting the prison recording. 770 P.2d 981 (Utah 1989).

¶48    In *Maurer*, our supreme court reversed a murder conviction based on the State's introduction at trial of an inflammatory letter written by the defendant to his victim's father. *Id.* at 987. The letter taunted the victim's father, stating, "You might have prevented [the murder]. I hope you feel guilt

over it." *Id.* at 982. The defendant wrote that "[i]t was a great feeling to watch her die." *Id.* The letter "display[ed] his callousness toward the killing" in "profane and vulgar language" manifesting "complete insensitivity to this tragedy." *Id.* at 983. Our supreme court held that even though portions of the letter were relevant to the defendant's guilt, the trial court erred in admitting the entire letter because much of it contained "little or no relevance to the central issues." *Id.* The court concluded that any relevance the balance of the letter had was "clearly outweighed" by the "repulsiveness of [the defendant's] expressions toward the victim." *Id.* (citation and internal quotation marks omitted). The court noted the risk of "a conviction based on a generalized assessment of character" when "the conversation include[d] obscenities, ethnic slurs, and otherwise coarse language." *Id.* at 985 (emphasis, citation, and internal quotation marks omitted). The court thus concluded that admission of the entire letter was improper under rule 403.

¶49 Alzaga argues that here, as in *Maurer*, the prison recording risked "provoking an emotional response from the jury" and triggering its "instinct to punish," making "a conviction based on a generalized assessment of character likely." We disagree.

¶50 The recording in this case had substantial probative value. Evidence is relevant "if it has any tendency to make a fact more or less probable than it would be without the evidence." Utah R. Evid. 401(a). The short exchange between Alzaga and another inmate, as recounted by Alzaga to his girlfriend, centered on the identity of Hannah's killer, a central question in the case. When Alzaga told his girlfriend that another inmate said to him, "[Y]ou're the one who killed my . . . girl," the jury could have concluded that the other inmate had accused him of killing Hannah. And the jury could have interpreted Alzaga's non-denial as consistent with guilt.

¶51 More importantly, unlike in *Maurer*, the trial court did not exceed its discretion in concluding that the danger of unfair prejudice did not substantially outweigh the probative value of the recording. True, Alzaga employed coarse language. But as the trial court observed, the words he used have lost much of their shock value in contemporary culture. These words alone were unlikely to induce the jury to return "a conviction based on a generalized assessment of character." *See Maurer*, 770 P.2d at 985 (citation and internal quotation marks omitted). Moreover, the core concern with the letter in *Maurer* was not so much the letter's language but what it revealed about the defendant's character: he wrote it to inflict additional emotional pain upon the victim's father, literally to add insult to injury. Alzaga's prison comments lack this quality. Thus, even if Alzaga's choice of words risked some unfair prejudice, we cannot conclude that the trial court abused its discretion in ruling that the recording's probative value was not substantially outweighed by the danger of unfair prejudice. *See* Utah R. Evid. 403.

## IV. Winter Photographs of the Crime Scene

¶52 Alzaga contends that the trial court abused its discretion by admitting three photographs of the crime scene taken in February 2012, even though the crimes took place in May 2010. He argues that the photographs should have been excluded as irrelevant and unfairly prejudicial. He also argues that the photographs lacked proper authentication.

¶53 The issue concerns whether leafy branches present in May when the crimes occurred, but absent in the February photographs, would have blocked an eyewitness's view of the crime. Mark testified that when he met the customer on the Footbridge, he observed Alzaga walking across the Jordan River Bridge. An eyewitness to the crimes testified that he could not see the Jordan River Bridge from the crime scene, while the detective recalled being able to see the Jordan River Bridge from the crime scene when he investigated the crime. Despite the

foliage, the detective could see "at least a fourth or a third" of the Jordan River Bridge's span, and he could see the top and bottom of the Jordan River Bridge. To demonstrate this, the detective took photographs of the view of the Jordan River Bridge from the Footbridge on the second day of trial, in February.

¶54 Defense counsel objected to the admission of the photographs on relevance grounds. She argued that the photographs were irrelevant because the charged crimes took place in May, whereas the photographs were taken in February. They would present a misleading view of the crime scene, she argued, because the February photographs did not show the May foliage that purportedly obscured the view between the Jordan River Bridge and the Footbridge.

¶55 The trial court overruled the objection. First, it concluded that the photographs satisfied rule 402's relevance requirement because Mark and the detective each testified that the foliage had not blocked their views. Second, the trial court concluded that under rule 403 the probative value of the photographs, while limited, was not substantially outweighed by any unfair prejudice, because the detective testified, and the jury understood, that he took the photographs in February 2012, not in May 2010.

¶56 On appeal, Alzaga contends that the photographs inaccurately depicted the view of the crime scene and "likely misled the jury into crediting [Mark's] disputed testimony." Because, "[a]s the judge noted, the probative value of the evidence was extremely low" and, Alzaga claims, "its tendency to mislead the jury was high," Alzaga argues that the trial court should have excluded the photographs under rules 402 and 403. The State responds that the trial court acted within its discretion in admitting the photographs because they were relevant and because their probative value was not substantially outweighed by the danger of unfair prejudice. We review a trial court's

evidentiary rulings for an abuse of discretion. *State v. Davis*, 2013 UT App 228, ¶ 13, 311 P.3d 538.

¶57    Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Utah R. Evid. 401(a). Under rule 402, relevant evidence is admissible unless barred by a constitution, statute, or other rule. *See id.* R. 402. "Together these rules establish a very low bar that deems evidence with even the slightest probative value relevant and presumptively admissible." *Richardson*, 2013 UT 50, ¶ 24 (citation and internal quotation marks omitted). Here, in light of conflicting testimony regarding whether a clear sight line existed between the Jordan River Bridge and the Footbridge, the trial court acted within its discretion in ruling the photographs relevant. The photographs had some "tendency to make a fact more or less probable than it would be without the evidence" because they tended to demonstrate whether from his position on the Footbridge Mark could have seen Alzaga on the Jordan River Bridge. *See* Utah R. Evid. 401.

¶58    Rule 403 allows the trial court to exclude relevant evidence if its "probative value is substantially outweighed by a danger of . . . unfair prejudice." *Id.* R. 403. Here, the photographs posed little risk of unfair prejudice. Although the photographs depicted the view of the Jordan River Bridge from the Footbridge as it existed in February 2012, not in May 2010, the detective explained this fact to the jury. Further, the photographs show the reach of the tree limbs and suggest where the foliage may have obscured the view. Thus, even if the photographs posed some slight danger of unfair prejudice, we cannot agree that the trial court exceeded its discretion in determining that such danger did not substantially outweigh the probative value. *See* Utah R. Evid. 403.

¶59    Alzaga next argues that the trial court erred in admitting the photographs because they were not properly authenticated under rule 901 of the Utah Rules of Evidence. The State

challenges the claim as unpreserved, and contends that in any event witness testimony authenticated the photographs. We agree with the State that the claim is unpreserved and reject it on that ground. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801.

¶60 In any event, we detect no error in the admission of the photographs. Evidence must be properly authenticated or identified before it is admitted into evidence at trial:

> To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

Utah R. Evid. 901(a). Rule 901's authentication requirement applies to photographs. *State v. Horton*, 848 P.2d 708, 714 (Utah Ct. App. 1993). "[I]f a competent witness with personal knowledge of the facts represented by a photograph testifies that the photograph accurately reflects those facts, it is admissible." *State v. Purcell*, 711 P.2d 243, 245 (Utah 1985) (citation omitted).

¶61 Here, the State produced evidence—the detective's testimony—sufficient to support a finding that the photographs were of what the State claimed they were, namely, depictions of the crime scene as it appeared in February 2012. The detective did not testify, nor did the State claim, that the photographs depicted the crime scene as it appeared in May of 2010. Accordingly, the trial court acted within its discretion in admitting the photographs under rule 901. *See* Utah R. Evid. 901(a).

### V. Self-Defense Jury Instructions

¶62 Alzaga contends that the trial court instructed the jury erroneously on self-defense relating to the aggravated assault against Mark. The trial court instructed the jury that a person

may use force reasonably necessary to defend against another's imminent use of unlawful force. The court then explained that a person may not lawfully use defensive force when "attempting to commit, committing, or fleeing after the commission, or the attempted commission of a felony." The court also instructed the jury that Alzaga did not have to prove self-defense but that if any evidence created a reasonable doubt as to his guilt, the jury should acquit:

> Defendant does not have to prove he acted in self-defense but if any evidence shown on the question of self-defense creates a reasonable doubt in your mind whether he is guilty of Aggravated Assault . . . , you are to find him not guilty of that count. If the evidence of self-defense creates a reasonable doubt in your mind about his guilt, he is entitled to an acquittal on [the Aggravated Assault count].

Defense counsel approved this instruction.

¶63   The court orally supplemented the initial instruction by telling the jury that "distribution of a controlled substance, heroin, is a felony." Defense counsel objected to the supplemental instruction at sidebar but stated no legal basis for the objection on the record. After closing arguments, and after the jury began deliberations, counsel stated on the record a rationale for her objection: the supplemental instruction allowed the jury to find that Alzaga committed a felony offense—distribution of heroin—without first finding the elements of that offense beyond a reasonable doubt. The prosecutor countered that the instruction was a correct statement of the law and that Alzaga had testified to distributing heroin. The trial court overruled the objection.

¶64   Alzaga challenges the jury instructions on four grounds. First, he argues that the oral instruction violated his right to self-

defense under Article I, section 1 of the Utah Constitution. "All men," that provision declares, "have the inherent and inalienable right to enjoy and defend their lives and liberties . . . ." Utah Const. art. 1, § 1. Alzaga contends that the court's oral instruction abridged his right to defend his life in two respects. First, it precluded self-defense even if the felony he was committing at the time of the aggravated assault—distribution of heroin—was nonviolent. Second, the instruction drew no causal connection between the distribution of heroin and the victim's use of force. The State responds that Alzaga did not preserve his constitutional claim, and in that any event, any error was harmless.

¶65     Under Utah's self-defense statute, a person is justified in using lethal force "only if the person reasonably believes that force is necessary to prevent death or serious bodily injury to the person or a third person as a result of another person's imminent use of unlawful force, or to prevent the commission of a forcible felony." Utah Code Ann. § 76-2-402(1)(b) (LexisNexis Supp. 2010). But a person "is not justified" in using any defensive force "if the person is attempting to commit, committing, or fleeing after the commission or attempted commission of a felony." *Id.* § 76-2-402(2)(a)(ii).

¶66     Alzaga does not dispute that he was dealing heroin at the time of the aggravated assault. Nor does he dispute that dealing heroin qualifies as a felony. Rather, he argues that it is not a forcible felony and that only attempting to commit, committing, or fleeing after committing *forcible* felonies should bar a defendant from invoking self-defense. He acknowledges that the statutory text does not contain this limitation but argues that failure to read "felony" as "forcible felony" produces absurd results. *Cf. In re Z.C.*, 2007 UT 54, ¶ 11, 165 P.3d 1206 ("[A] court should not follow the literal language of a statute if its plain meaning works an absurd result." (citation and internal quotation marks omitted)). "If the statute were read literally,"

Alzaga reasons, "a man guilty of theft of utility services could not defend himself in his own home."

¶67    We agree with the State that any possible error in the oral jury instruction was harmless. *See* Utah R. Crim. P. 30(a). Any possible error here was harmless because the jury found Alzaga guilty of a forcible felony. A "forcible felony" includes "arson, robbery, and burglary as defined in Title 76, Chapter 6 [of the Utah Code], Offenses Against Property," as well as "[a]ny other felony offense which involves the use of force or violence against a person so as to create a substantial danger of death or serious bodily injury." Utah Code Ann. § 76-2-402(4)(a), (b). Title 76, Chapter 6 includes the crime of aggravated robbery. The jury convicted Alzaga of aggravated robbery, and he does not argue on appeal that the facts presented at trial were insufficient to support that conviction. We have previously held that a defendant who kills another while committing an aggravated robbery cannot avail himself of the self-defense statute. *State v. Soules*, 2012 UT App 238, ¶ 4, 286 P.3d 25.[6] Thus, Alzaga's first self-defense claim fails under any applicable standard of review.

¶68    Second, Alzaga argues that instructing the jury that distribution of heroin is a felony allowed the jury to find him ineligible for self-defense without first requiring the jury to find all of the elements of heroin distribution, an uncharged offense, beyond a reasonable doubt. The trial court orally instructed the jury, "I'm instructing you further that distribution of a controlled substance, heroin, is a felony." The State responds that Alzaga did not timely preserve this claim and that he fails to assert any

---

6. Alzaga did not argue self-defense to the charge of aggravated robbery. Indeed, "[t]he premise[] of an accused being permitted to raise the defense of self-defense to the charge of robbery borders on the absurd." *Sutton v. State*, 776 A.2d 47, 71 (Md. Ct. Spec. App. 2001).

exception to the preservation rule on appeal. And even if Alzaga timely preserved his claim, the State argues, any error was harmless.

¶69 This claim fails for the same reason that Alzaga's first challenge to the instruction failed: any possible error was harmless. "Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." Utah R. Crim. P. 30(a). As explained above, because Alzaga committed a forcible felony—aggravated robbery—he was "not justified in using force" against Mark. *See* Utah Code Ann. § 76-2-402(2)(a). Accordingly, any error in instructing the jury that distribution of heroin is a felony was harmless.

¶70 Third, Alzaga argues that the court's written self-defense instruction did not adequately convey the State's burden to disprove self-defense beyond a reasonable doubt. He argues that counsel performed ineffectively for failing to correct this error. The State responds that Alzaga has inadequately briefed this claim and that he has therefore not satisfied his burden of persuasion on his ineffective-assistance-of-counsel claim. "In determining a claim of ineffective assistance of counsel raised for the first time on appeal, we must decide whether [the] defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Aguirre-Juarez*, 2014 UT App 212, ¶ 6, 335 P.3d 896 (alteration in original) (citation and internal quotation marks omitted); *see also State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

¶71 To succeed on an ineffective-assistance-of-counsel claim, an appellant must show that (1) "counsel's performance was deficient in that it 'fell below an objective standard of reasonableness'" and (2) "counsel's performance was prejudicial in that 'there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Menzies v. Galetka*, 2006 UT 81, ¶ 87, 150 P.3d 480 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). An appellant must rebut "a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation and internal quotation marks omitted). Therefore, any ambiguities or deficiencies in the appellate record "simply will be construed in favor of a finding that counsel performed effectively." *State v. Litherland*, 2000 UT 76, ¶ 17, 12 P.3d 92. "[P]roof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality." *Allen v. Friel*, 2008 UT 56, ¶ 21, 194 P.3d 903 (alteration in original) (citation and internal quotation marks omitted).

¶72　The trial court's instruction explained that Alzaga had no burden to prove self-defense and that the existence of reasonable doubt concerning whether he acted in self-defense required acquittal:

> Defendant does not have to prove he acted in self-defense but if any evidence shown on the question of self-defense creates a reasonable doubt in your mind whether he is guilty of Aggravated Assault . . . , you are to find him not guilty of that count. If the evidence of self-defense creates a reasonable doubt in your mind about his guilt, he is entitled to an acquittal on [the Aggravated Assault count].

Alzaga complains on appeal that this instruction does not state explicitly that the State bore the burden of disproving self-defense beyond a reasonable doubt.

¶73　"[T]he failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance." *Codianna v. Morris*, 660 P.2d 1101, 1109 (Utah 1983) (citation and internal quotation marks omitted). Here, a trial

objection would have been futile because the jury instructions adequately instructed the jury on the burden of proof.

¶74   Our supreme court's decision in *State v. Knoll* supports this conclusion. 712 P.2d 211 (Utah 1985). In *Knoll*, the trial court approved an instruction that did not state explicitly that the State retained the burden of disproving self-defense beyond a reasonable doubt:

> [I]f upon the whole of the evidence, including that produced by the defendant, . . . or otherwise shown in evidence, the jury entertains a reasonable doubt as to the defendant's guilt of any element necessary to constitute the charged [offense] or one included therein, the defendant is entitled to an acquittal.

*Id.* at 215. The court held that even though "the trial court did not give an instruction that stated that the prosecution had to prove the absence of self-defense beyond a reasonable doubt," the instruction nevertheless "constituted a correct statement of the law." *Id.* The instruction clearly conveyed that the jury should consider any evidence of self-defense, that the burden of proof remained with the State at all stages of the trial, and that "if the jury entertained a reasonable doubt about whether defendant acted in self-defense, it should acquit." *Id.*

¶75   Here, as in *Knoll*, even though the instruction did not expressly state that the prosecution had to prove the absence of self-defense beyond a reasonable doubt, it made clear that the jury must consider the defense, that the burden of proof remained with the State, and that Alzaga did "not have to prove he acted in self-defense." And in stating that "if any evidence shown on the question of self-defense creates a reasonable doubt in your mind" Alzaga was "entitled to an acquittal," the instruction correctly conveyed that the State retained the burden of proof of disproving self-defense beyond a reasonable doubt.

Accordingly, because the instruction correctly allocated the burden of proof under controlling precedent, counsel did not perform deficiently in not objecting to it.

¶76 Finally, Alzaga argues that the verdict form did not identify the State's burden of proving aggravated assault, and disproving self-defense, beyond a reasonable doubt. Because this claim is unpreserved, he argues that the trial court plainly erred and that his trial counsel ineffectively failed to correct this error. The State responds that Alzaga has inadequately briefed his claim and thus has not met his burden of persuasion on appeal.

¶77 "We review the jury instructions, including the jury verdict forms, for correctness." *State v. Johnson*, 2014 UT App 161, ¶ 11, 330 P.3d 743, *cert. granted*, 343 P.3d 708 (Utah 2015); *cf. State v. Houskeeper*, 2002 UT 118, ¶ 11, 62 P.3d 444. To demonstrate plain error, a defendant must establish that (1) an error exists, (2) the error should have been obvious to the trial court, and (3) the error was harmful; that is, "absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993). "In determining a claim of ineffective assistance of counsel raised for the first time on appeal, we must decide whether [the] defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Aguirre-Juarez*, 2014 UT App 212, ¶ 6, 335 P.3d 896 (alteration in original) (citation and internal quotation marks omitted); *see also State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

¶78 "[F]ailure to adequately instruct the jury 'concerning the burden of proof as to self-defense,' is reversible error and requires a new trial." *State v. Garcia*, 2001 UT App 19, ¶ 18, 18 P.3d 1123 (quoting *State v. Torres*, 619 P.2d 694, 696 (Utah 1980)). "The duty to properly instruct the jury applies to the verdict form." *State v. Campos*, 2013 UT App 213, ¶ 42, 309 P.3d 1160. "[W]hen reviewing an alleged error in the jury instructions, 'we

look at the jury instructions in their entirety.'" *Id.* ¶ 64 (quoting *State v. Maestas*, 2012 UT 46, ¶ 148, 299 P.3d 892). "[I]f taken as a whole the[] [jury instructions] fairly instruct the jury on the law applicable to the case, the fact that one of the instructions, standing alone, is not as accurate as it might have been is not reversible error." *Id.* (first alteration in original) (citation and internal quotation marks omitted).

¶79    Here, the verdict form read in isolation did not explain the State's burden of disproving self-defense beyond a reasonable doubt:

>       We, the jury . . . unanimously find the defendant . . . [a]s to Count 3, AGGRAVATED ASSAULT:
>
>       __ NOT GUILTY
>       __ GUILTY
>
> If you find the defendant Guilty, by finding he committed the assault . . . answer these questions:
>
>       Did the State prove beyond a reasonable doubt that defendant intentionally inflicted serious bodily injury on [Mark]? If YES, stop and sign the verdict form. If NO, answer the next question.
>
>       __ YES
>       __ NO
>
>       Did the State prove beyond a reasonable doubt that defendant assaulted [Mark] and used a dangerous weapon:
>
>       __ YES
>       __ NO

¶80    Alzaga cites *State v. Campos* in support of his contention that the trial court plainly erred in approving the instruction and that counsel ineffectively failed to correct the error. 2013 UT App 213, 309 P.3d 1160. In *Campos*, we held that the verdict form at issue affirmatively, but erroneously, instructed the jury on the burden of proof for self-defense. *Id.* ¶ 43. The instructions stated that if the jury found Campos guilty of attempted murder with resulting injury, they should then decide whether "*beyond a reasonable doubt*, . . . the defense of Imperfect Self Defense *applies* in this case." *Id.* ¶ 39. We explained that "[t]he fundamental problem with the verdict form" was "that it require[d] an affirmative defense to be established beyond a reasonable doubt." *Id.* ¶ 41. But under Utah law, "[a] defendant need only produce enough evidence to raise a reasonable basis for the affirmative defense." *Id.* "Once that initial showing is made, the burden shifts to the [S]tate to prove to the jury, beyond a reasonable doubt, that the defense lacks merit." *Id.* (citation and internal quotation marks omitted).

¶81    Here, unlike in *Campos*, the verdict form did not convey that an affirmative defense requires the defendant to prove self-defense beyond a reasonable doubt. Indeed, the verdict form did not address the burden of proof with respect to self-defense at all. But, as explained above, the jury instructions elsewhere adequately conveyed the State's burden with respect to Alzaga's claim of self-defense. The verdict form instructed the jury to decide "yes" or "no" only as to whether "the State proved beyond a reasonable doubt" that Alzaga committed aggravated assault with a dangerous weapon. That statement incorporates the State's burden of proof pertaining to self-defense because the jury could have found Alzaga guilty beyond a reasonable doubt only after concluding that his evidence of self-defense did not create a reasonable doubt as to this guilt.

¶82    Accordingly, the trial court did not plainly err in approving the verdict form, nor did counsel perform ineffectively by not objecting to it.

## VI. Mark's Eyewitness Identification

¶83    Alzaga next contends that counsel "ineffectively failed to present key expert testimony which would have established reasonable doubt of . . . Alzaga's involvement." Alzaga seeks a new trial "so that he may present this testimony." The State responds that Alzaga's claim fails because "by the time of trial, counsel had reasonably opted to concede that [Alzaga] was at the crime scene and argue[d] that he was the victim, rather than that he had been misidentified." "In determining a claim of ineffective assistance of counsel raised for the first time on appeal, we must decide whether [the] defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Aguirre-Juarez*, 2014 UT App 212, ¶ 6, 335 P.3d 896 (alteration in original) (citation and internal quotation marks omitted); *see also State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

¶84    During the investigation, Mark described Alzaga to police officers as "5-foot 11, 130–140 pounds, skinny, tall, [with] spikey [sic] hair . . . [that] looked like a crown." A few days after the attacks, Mark examined a six-person photo array prepared by police with "as many consistencies . . . with the suspect" as possible. Mark identified Alzaga from the photo lineup, but only after having taken a narcotic painkiller and feeling "a little bit loopy" and after having looked at the photos for "quite some time" and "certainly [for] longer than most take to look at a lineup."

¶85    At trial, defense counsel challenged the identification as "unreliable and unduly suggestive," but the trial court denied the motion. Counsel did not request an instruction advising the jury of the factors relevant in evaluating eyewitness identifications, nor did she challenge the identification with expert testimony or cross-examination.

¶86    "'[C]ounsel's decision to call or not to call an expert witness is a matter of trial strategy, which will not be questioned

and viewed as ineffectiveness unless there is no reasonable basis for that decision.'" *State v. Houston*, 2015 UT 40, ¶ 80 (alteration in original) (quoting *State v. Tyler*, 850 P.2d 1250, 1256 (Utah 1993)). "Thus, to demonstrate that his counsel was ineffective in retaining and presenting expert witnesses, [a defendant] must 'rebut the strong presumption that under the circumstances, [counsel's] action might be considered sound trial strategy.'" *Id.* (second alteration in original) (quoting *Taylor v. State*, 2007 UT 12, ¶ 73, 156 P.3d 739). "This is because there are 'countless ways to provide effective assistance in any given case,' and '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *Id.* (alteration in original) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

¶87 On appeal, Alzaga argues that counsel's failure to call an expert witness to challenge Mark's eyewitness identification tracks the facts in *State v. Maestas*, where our supreme court held that defense counsel ineffectively failed to challenge eyewitness identifications. 1999 UT 32, ¶ 31, 984 P.2d 376. There, shortly after the crime was committed by a man wearing a mask and a cap covering his head, witnesses identified the defendant, who was handcuffed and surrounded by police cars with their lights shining on him. *Id.* ¶¶ 2, 23. The defendant's sole defense "was the unreliability of the eyewitness identifications." *Id.* ¶ 25. The court noted that all of the witnesses' "identifications were tainted by a highly-suggestive show-up." *Id.* ¶ 29. The court held that "unless obvious tactical reasons exist to forego an instruction, trial counsel . . . should request a cautionary eyewitness instruction." *Id.* ¶ 28.

¶88 The present case bears little resemblance to *Maestas.* Here, obvious tactical considerations prompted counsel's decision to forego a misidentification defense. First, multiple witnesses, not just Mark, placed Alzaga around and at the scene of the crime. In addition, police found Alzaga's toy gun, bearing his fingerprints, in brush adjacent to the Footbridge where eyewitnesses saw him discard it. This evidence supports counsel's reasonable strategic

choice to abandon any defense that Alzaga was not present at the scene.

¶89    Most important, at trial Alzaga acknowledged on the stand that he had been present at the crime scene.[7] He admitted to stabbing Mark but maintained that he acted in self-defense. This defense was incompatible with, and at least as reasonable as, a misidentification defense. "[C]ounsel's decision to choose one of two alternative, reasonable trial strategies is not grounds for an ineffective assistance of counsel ruling." *State v. Lucero*, 2014 UT 15, ¶ 53, 328 P.3d 841. We thus cannot conclude that Alzaga's counsel performed deficiently in not calling an eyewitness expert. Accordingly, Alzaga has not demonstrated ineffective assistance of counsel.

### VII. New Trial Motion

¶90    Finally, Alzaga contends that the trial court abused its discretion in denying his motion for a new trial. He argues that he "must receive a new trial based on newly discovered exculpatory evidence, [specifically, his] cell phone, which had text messages advertising a sale of heroin on the day of the murder." He argues that "the cell phone, and its contents, rendered a different result probable." The State responds that the trial court acted within its discretion because Alzaga "has not adequately challenged the trial court's findings that he did not exercise reasonable diligence in trying to produce the evidence, that the evidence was merely cumulative, and that the evidence would not have altered the outcome." "When reviewing a trial

---

7. The decision whether to testify lies exclusively with the accused. *See Menzies v. State*, 2014 UT 40, ¶ 118 n.119, 344 P.3d 581; *see also* Utah R. Prof'l Conduct 1.2(a) ("In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to . . . whether the client will testify.").

court's denial of a motion for a new trial, we will not reverse absent a clear abuse of discretion by the trial court." *State v. Pinder*, 2005 UT 15, ¶ 20, 114 P.3d 551 (citation and internal quotation marks omitted). We review the legal standards applied by the trial court for correctness and its factual findings for clear error. *Id.*

¶91 The jury convicted Alzaga of aggravated robbery, aggravated assault for stabbing Mark, and murder for killing Hannah. Alzaga filed a timely motion for a new trial, arguing that newly discovered exculpatory evidence—text messages on his cell phone—corroborated his testimony that he distributed heroin on the day of the crimes. The text messages suggested that Alzaga was selling drugs around the time of the crimes. One message, sent to ten different people, offered to sell heroin. Other text messages contained offers to buy and sell cocaine, "pills," and "hash."

¶92 Alzaga told his defense counsel about the text messages approximately a month before the trial. Alzaga told counsel he believed that his girlfriend had the cell phone and that she would produce it. Alzaga's girlfriend did not produce the cell phone at that time. About two weeks before trial, counsel again met with Alzaga, who said that his girlfriend would deliver the phone in a couple of days; again, she failed to do so. The State informed Alzaga's counsel that Alzaga's girlfriend went to California to avoid being subpoenaed for trial. Counsel did not request the trial court's assistance in procuring the cell phone, nor did she request a continuance.

¶93 The day after Alzaga was convicted on all charges, his girlfriend dropped the cell phone off with counsel. In his motion for a new trial, Alzaga argued that because he "had no ability to force his girlfriend to produce the phone," the trial court "abused its discretion in refusing to grant a new trial." The State responded that the text messages were not newly discovered. In denying Alzaga's motion for a new trial, the court found that (1)

with reasonable diligence, Alzaga could have discovered and produced the text messages at trial; (2) the text messages were cumulative of Alzaga's own testimony and other corroborative evidence that he sold heroin; and (3) admission of the text messages at trial would not have made a different result probable.

¶94 A trial court may grant a new trial motion based on newly discovered evidence. *See e.g.*, *State v. Martin*, 2002 UT 34, ¶ 45, 44 P.3d 805; *see also* Utah R. Crim. P. 24(a). Newly discovered evidence warrants a new trial only if it (1) "could not with reasonable diligence have been discovered and produced at the trial," (2) is not "merely cumulative," and (3) would "render a different result probable on the retrial of the case." *Pinder*, 2005 UT 15, ¶ 66 (citation and internal quotation marks omitted). In assessing a motion for a new trial, we review the trial court's factual findings for clear error. *State v. Billingsley*, 2013 UT 17, ¶ 9, 311 P.3d 995. And in determining whether newly discovered evidence warrants granting a new trial, we "afford trial judges a wide range of discretion." *Pinder*, 2005 UT 15, ¶ 66 (citation and internal quotation marks omitted).

¶95 Here, Alzaga fails to demonstrate that the trial court's factual findings were clearly erroneous. To begin with, Alzaga does not marshal the evidence supporting the trial court's denial of his motion for a new trial. A "party who fails to identify and deal with supportive evidence will never persuade an appellate court to reverse under the deferential standard of review." *State v. Nielsen*, 2014 UT 10, ¶ 40, 326 P.3d 645. In any event, the record supports each of the trial court's factual findings. Accordingly, Alzaga fails, as a matter of law, to satisfy his burden of persuasion.

¶96 First, the record supports the trial court's finding that Alzaga could have discovered and produced the text messages at trial. As the trial court observed, Alzaga knew about the cell phone, its contents, and its whereabouts for nearly two years

before trial, but he failed to notify counsel about the phone until mere weeks before trial. Thus, even though Alzaga attempted to retrieve the phone in the weeks preceding trial, he failed to exercise reasonable diligence under the circumstances when he did not attempt to retrieve it, or tell his attorney about it, earlier. Furthermore, the clear weight of the evidence does not contravene the trial court's finding that counsel did not exercise reasonable diligence in retrieving the cell phone. Though aware of the cell phone before trial, counsel nevertheless did not request a continuance or seek to enlist the court's assistance in procuring the cell phone. Accordingly, because the record supports the trial court's factual findings, it did not clearly err by finding that the defense did not exercise reasonable diligence in producing the cell phone at trial.

¶97    Second, the record supports the trial court's finding that the text messages were cumulative of Alzaga's own testimony and other evidence that he sold heroin. Alzaga testified that he sold heroin, and other evidence corroborated that testimony. For instance, text messages recovered from Alzaga's girlfriend's phone corroborated his testimony that he sold heroin in the days preceding the crimes. Accordingly, the trial court did not clearly err in finding that the text messages on Alzaga's phone were cumulative of evidence already presented to the jury.

¶98    Finally, the record supports the trial court's finding that retrying the case with the text messages in evidence would not make a different result probable. Alzaga's testimony—and the text messages on Alzaga's girlfriend's phone—supported his contention that he dealt heroin. But no party disputed that Alzaga dealt heroin. The case centered on who committed the crimes and under what circumstances, not whether one or more of the principals dealt drugs. Alzaga's text messages provide no evidence about who committed the crimes. Furthermore, given the abundance of other evidence tending to prove Alzaga's guilt, the text messages would not have made a different result more probable. Accordingly, the trial court did not clearly err by

finding that the text messages would not have made a different result probable.

¶99    Because Alzaga has failed to show that the trial court clearly erred in its factual findings, he cannot demonstrate that the trial court exceeded its wide discretion by denying his motion for a new trial.

## CONCLUSION

¶100 In sum, Alzaga has failed to carry the burden of persuasion on the claims he has raised on appeal. We therefore affirm his convictions.

————————